Argued and submitted September 30, 1993, affirmed April 20, petition for review denied June 21, 1994 (319 Or 274)

STATE OF OREGON,
*Respondent,*

*v.*

FRANK EDWARD GABLE,
*Appellant.*

(90C-20442; CA A71159)

873 P2d 351

John P. Daugirda argued the cause for appellant. With him on the briefs was Roost & Daugirda.

Rives Kistler, Assistant Attorney General, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Deits, Presiding Judge, and Riggs and Haselton,* Judges.

DEITS, P. J.

---

* Haselton, J., *vice* Durham, J.

## DEITS, P. J.

Defendant appeals his conviction on six counts of aggravated murder, ORS 163.095(2)(a)(B) and ORS 163.095(2)(e), and one count of murder, ORS 163.115(1)(a), assigning as error the denial of his motion to suppress statements allegedly obtained in violation of his right against compelled self-incrimination under Article I, section 12, of the Oregon Constitution and the Fifth Amendment to the United States Constitution. He also assigns as error his sentence of life imprisonment without the possibility of parole or release as a violation of the *ex post facto* clauses of the state and federal constitutions. We affirm.

On January 17, 1989, Michael Francke was fatally stabbed in the parking lot of the Dome Building located in Salem, Oregon. The police received a tip that defendant may have information about Francke's murder. Subsequently, the police spoke with defendant on several different occasions. They learned that he was familiar with the Dome Building and the surrounding area, because he had worked in the area, and that his wife worked at the state hospital located next to the Dome Building. He became a suspect after the police learned that he had made incriminating admissions to five of his friends. During questioning by the police, defendant gave inconsistent alibis and made potentially incriminating statements.

At trial, defendant moved to suppress the statements that he made to the police between November 3, 1989, and the date of his arraignment, April 9, 1990. He argued that they were obtained in violation of his right against compelled self-incrimination. The trial court denied his motion, finding that defendant did not assert his right to remain silent nor did he invoke his right to counsel and that, even if he had, he subsequently reinitiated conversation with the police. Defendant assigns as error the trial court's denial of his motion.

■ As a threshold matter, the state argues that the trial court properly denied defendant's motion to suppress because it was untimely. The state argues that ORS 135.037 required defendant to raise any constitutional objections to the admission of his statements at the pretrial omnibus hearing. Defendant argues that his motion to suppress was

timely, because the purpose of the omnibus hearing was limited to a determination of whether the state could meet its preliminary obligation to show that his statements were not coerced. According to defendant, the trial court reserved for trial its rulings on potential *Miranda* violations, which would include whether the police continued to interrogate him after he invoked his right to counsel and, in his view, it was within the trial court's discretion to consider the motion at trial.

ORS 135.037 provides:

"(1) At any time after the filing of the accusatory instrument in circuit court and before the commencement of trial thereon, the court upon motion of any party shall, and upon its own motion may, order an omnibus hearing.

"(2) The purpose of an omnibus hearing shall be to rule on all pretrial motions and requests, including but not limited to the following issues:

"(a) Suppression of evidence;

"* * * * *

"(c) Challenges to the voluntariness of admissions or confession[.]"

As the state concedes, the statute contains permissive, not mandatory, language regarding whether a pretrial hearing must be requested. The statute provides that either party may request a pretrial omnibus hearing, that the court shall grant such a request, and that the court, on its own motion, may order an omnibus hearing.

The state first argues that, because an omnibus hearing was held, defendant was required to raise all possible constitutional challenges to the admission of his statements then. We disagree. The state moved for a pretrial omnibus hearing in order to make a preliminary showing that defendant's admissions were voluntary, as required by *State v. Brewton*, 238 Or 590, 395 P2d 874 (1964).[1] As the prosecutor explained at the beginning of the omnibus hearing:

"[The state] is relying on *State v. Brewton*, [*supra*], *State v. Davis*, [98 Or App 752, 780 P2d 807 (1989), *rev den* 309 Or

---

[1] In its brief, the state asserts that it requested "an omnibus hearing to get a dispositive ruling whether defendant's statements were obtained consistent with his Article I and Fifth Amendment rights." The record, however, does not support that assertion.

333 (1990),] and then there is a recent death penalty case, it's *State v. Stevens,* [311 Or 119, 806 P2d 92 (1991)].

"Basically, I think the rule in Oregon is that the state has to show to the Court's satisfaction, pretrial or before that statement is submitted to the jury, that the statement was voluntary."

In *State v. Brewton, supra,* the court held that, before a defendant's admission may be submitted to the jury, the trial court must make a preliminary determination that the admission was voluntary.

■ A defendant's admissions may be suppressed as involuntary either because they were the product of coercion or because the defendant's *Miranda* rights were violated. Admissions that are the product of coercion are inherently unreliable and, therefore, not admissible for any purpose. *Mincey v. Arizona,* 437 US 385, 98 S Ct 2408, 57 L Ed 2d 290 (1978). However, an admission obtained in violation of *Miranda* may be admitted for impeachment purposes. *Michigan v. Tucker,* 417 US 433, 94 S Ct 2357, 41 L Ed 2d 182, (1974). *Miranda* rights are procedural safeguards designed to protect a defendant's Fifth Amendment right against self-incrimination, but they are not coextensive with the Fifth Amendment. As the court explained in *Michigan v. Tucker, supra*:

"The Court [in *Miranda v. Arizona,* 384 US 436, 16 L Ed 2d 694, 86 S Ct 1602 (1966),] recognized that these procedural safeguards [*Miranda*-like warnings] were not themselves rights protected by the Constitution but were instead measures to insure that the right against compulsory self-incrimination was protected." 417 US at 444.

As noted earlier, the state requested a pretrial hearing on the basis of the court's holding in *State v. Brewton, supra*. *Brewton* was decided before *Miranda v. Arizona, supra,* and, therefore, did not involve a determination of whether the police failed to comply with the procedural safeguards for custodial interrogation announced in *Miranda*. Likewise, the two additional cases referred to by the prosecutor, *State v. Davis, supra,* and *State v. Stevens, supra,* involved, respectively, whether the defendant's admissions were the product of coercion and whether the defendant was incapable of giving a voluntary statement due to drug intoxication. Although the state could have requested a pretrial

hearing to determine whether defendant's statements were obtained consistent with his *Miranda* rights, its initial request for an omnibus hearing did not encompass that issue.[2] We conclude that ORS 135.037 did not require defendant to present evidence or argument on an issue that was not raised in the state's initial request for an omnibus hearing.

■ Next, the state argues that defendant was precluded from raising the *Miranda* issues at trial because they were in fact fully litigated at the omnibus hearing and the court made a dispositive ruling on those issues. The state contends that because this issue was litigated in the pretrial hearing, it was not within the trial court's discretion to reconsider the issue at trial. It is unnecessary to decide whether the court had such discretion because we conclude that this issue was not fully litigated, nor did the trial court make a dispositive ruling on the issue. It is unclear from the record whether *Miranda* issues were actually litigated and a dispositive ruling was issued at the omnibus hearing. During the pretrial hearing, defendant objected to the admission of certain of his statements on the basis that he had not received *Miranda*-like warnings. The state responded that *Miranda*-like warnings were not required, because defendant either was not in custody or was not being interrogated. The trial court noted that it could not resolve the *Miranda* issues raised by defendant without knowing the substance of his statements. The court then overruled defendant's objections, *but specifically informed defense counsel that the objections could be renewed at trial.*

The record is confusing, however, as to whether the court did make a dispositive ruling on the *Miranda* issues because, at the conclusion of the hearing, the prosecutor explicitly asked the court to find that defendant's statements were obtained consistent with his *Miranda* rights and the court purported to make that finding:

"[Prosecutor]: Your honor, if you're finding that every statement testified to by the officers are—is admissible or is

---

[2] The state argues that defendant should have been required to move for the suppression of his statements pretrial, because if the motion is made at trial, the state may not appeal an adverse ruling. *See* ORS 138.060. Under ORS 135.037, the state could have requested a pretrial ruling that defendant's statements were obtained consistent with his *Miranda* rights, preserving its right to appeal an adverse ruling.

voluntary and not in violation of Miranda rights, that would be sufficient. We can frame an order which reflects that.

> "[Court]: I find that. I mean, certainly in the situation there are — if you want to use the magic words, I guess Dr. Cochran suggested to us that you want to prepare him psychologically to answer questions. I guess you could find a case where they used some magic words that that's somehow, you could call that psychological manipulation or whatever, but I don't find that it existed here. * * * So, I certainly don't find that under the totality of the circumstances here that his will was overborne."

However, in the light of the court's previous statement to defense counsel that objections on the basis of *Miranda* violations could be raised at trial and that the state's initial request was for a limited *Brewton* hearing, it was reasonable for defense counsel to believe that the omnibus hearing was limited to the issue of whether defendant's statements were coerced, not whether they were obtained in violation of his *Miranda* rights.[3] Our conclusion also is consistent with the trial court's decision at trial to allow defendant to move for suppression of his statements on the ground that his *Miranda* rights were violated. Under these circumstances, we conclude that defendant's motion made at trial to suppress his statements was timely and that we may review the trial court's denial of that motion.

Defendant assigns as error the trial court's denial of his motion to suppress statements that he made to the police on November 3, 1989, after he allegedly invoked his right to counsel and asserted his right to remain silent. The encounter on November 3, 1989, began when defendant, who was in custody at the Coos County jail on unrelated charges, twice requested that Detective Bain of the Oregon State Police be contacted because he wanted to share information with him about the Francke murder. On the basis of those requests,

---

[3] The state also argued that, at the pretrial hearing, defendant had conceded that he would be precluded from objecting to the admission of his statements on the basis of *Miranda* violations. Defendant conceded that the trial court's pretrial ruling would preclude an objection at trial to the admission of his statements for "lack of voluntariness." However, for the same reasons outlined in the text, defendant did not concede that he would be precluded from objecting to the admission of his statements on the basis of *Miranda* violations. Rather, in context, defendant's concession was that he would be precluded from objecting to the admission of his statements on the basis that they were the product of coercion.

Bain and Detective Ackom met with defendant. Ackom first asked defendant if he had contacted them of his own free will and he said yes. Ackom then confirmed that defendant was not presently represented by a lawyer. Defendant was given *Miranda*-like warnings. He signed a document acknowledging that his rights were read to him and that he understood them. Ackom told him that "we're here strictly because you called us and wanted to talk to us because you apparently stated that you had some information for us, so we're here to listen."

Defendant said that he had read a recent newspaper article that reported his alleged confession to a fellow inmate. Defendant wanted Ackom to know that the inmate was not being truthful. Additionally, defendant said that despite his former attorney's advice that he should not say anything, he wanted to "help the investigation, I'll help the investigation." He also wanted to ensure that he was not a focal suspect. Before defendant's alleged request for an attorney and assertion of his right to silence, he repeatedly said that he wanted to help Ackom with his investigation of the Francke murder: "I would do basically anything I could in my power to help you guys." Defendant repeatedly indicated his willingness to discuss what he knew about the Francke murder. However, he said that he did not want to be accused of being the killer.

Before his alleged invocation of his right to counsel and his right to silence, defendant threatened to end the interview and to ask for the assistance of counsel, if Ackom treated him as a suspect:

> "It's like you've come around to me 50 times and you're going to keep coming around to the wrong person and I'm going against everything my attorney told me. 'Now don't talk to them. If it comes to trial, it comes to trial.' I don't believe in that; it's like I'm a Christian now, a Christian before I come into jail and it's like, there's a killer out there and he did wrong and I'm trying to do my best to help you and to let you know I'm not the killer. You know, I might have made some stupid statements or been involved in some funky statements and they might have perceived something wrong or whatever, you know. If we can clarify that, great! That'll help you guys, you know, with your investigation and maybe find this killer. I'm all for that. I'm not going to sit here and have you guys start accusing me again, and I'll just say well, I

terminate this conversation and I'd like an attorney. Because . . . . I'm not a killer.

"Ackom: Well, we're here simply because you called and wanted to talk to us and we're here to listen to what you have to say. And we're just trying to establish, you know, what you were doing that night . . . . . ."

Defendant does not argue that he invoked his right to counsel or his right to remain silent at that point in the interrogation.

About an hour later, the following exchange took place:

"ACKOM: And you asked the question * * * do you think I did it? You're asking me, I would like to say with everything that I know about the case, that I would say 'yes.'

"[DEFENDANT]: At this time, yeah. That wouldn't bother me a bit. But I know that, and I think that you're wasting more time and there's a killer out there. That's the only thing I can tell you, man. [Ackom], there's a killer out there. It's not me, man. That's the only thing I can tell you, man. [Ackom], it's not me. You know, I don't know what I can tell you. You know, if you've got to give me Sodium Pentothal, I'll take another lie detector test. You know, I would do anything, anything. Truth serum, anything.

"ACKOM: You want to know something else I believe. * * * I think you did it and I think you want to tell me.

"[DEFENDANT]: Sure, I would if I did do it. Ah, I don't know.

"ACKOM: I think if we could go off somewhere, and you and me were totally alone and there were no tape recorders (defendant laughed loudly) and the room wasn't bugged, I think you'd tell me.

"[DEFENDANT]: Even if I hadn't did it?

"ACKOM: Um-hum.

"[DEFENDANT]: Oh, I probably would, if I hadn't did it. You know, I would probably be able to tell you, but you know, I hadn't did it and I ain't never takin' in any lying. So, we can end the conversation here and we'll get us an attorney as you flip on to accusing me. I'm going to ask for an attorney. I'm not going to sit here and be accused because I'm not a killer you know. I'm not.

"ACKOM: I want you to know, I want to make it clear, that we're here to talk to you. Anything you want to tell us, hey, I'll stay here all night. I want to talk to you.

"[DEFENDANT]: I'm basically done. It's like, you know, I would look at any picture and you tell me they said this, and I'll give you the reasons maybe they say things. It's like that girl. You say maybe she said something. I never seen her. I don't like her. I don't trust nobody."[4]

On the basis of this exchange, defendant argues that he invoked his right to counsel and his right to remain silent and that his subsequent statements to the police should be suppressed, because they were obtained in violation of his right against compelled self-incrimination. Alternatively, he argues that he made an equivocal request for an attorney and that Ackom impermissibly continued the interrogation without attempting to clarify whether defendant wanted the assistance of counsel.

When a suspect in custody unequivocally requests to talk with an attorney, the police must honor that request and their interrogation must cease. *State v. Kell*, 303 Or 89, 734 P2d 334 (1987). In deciding whether a statement is unequivocal, "a trial court may only look at the conversation that preceded the statement." *State v. Wickey*, 95 Or App 225, 769 P2d 208 (1989); *Smith v. Illinois*, 469 US 91, 99, 105 S Ct 490, 83 L Ed 2d 488 (1984). If a suspect's request for counsel is equivocal, subsequent interrogation must be limited to clarifying the suspect's intent. *U.S. v. Fouche*, 833 F2d 1284 (9th Cir 1987), *cert den* 486 US 101 (1988). However, a suspect remains free to waive the right to counsel and the right to remain silent. *State v. Kell, supra*; *Connecticut v. Barrett*, 479 US 523, 107 S Ct 828, 93 L Ed 2d 920 (1987).

---

[4] On appeal, the state argues that the transcript of the tape of the November 3, 1989, interview is inaccurate. In particular, it asserts that the following exchange took place:

"DEFENDANT: [S]o we can end the conversation here and I'll again ask for an attorney if that's what you want.

"[DETECTIVE ACKOM:] [starts to speak]

"DEFENDANT: As soon as you flip on to accusing me, I'm going to ask for an attorney. I'm not going to sit here and be accused because I'm not guilty. You know, I'm not."

In view of our disposition, it is not necessary to decide which version of defendant's statements we should use. The state did offer the transcript as the official version of the conversation and presented evidence as to its accuracy and it was admitted into evidence at the hearing on defendant's motion to suppress. However, a tape recording of the conversation was also admitted into evidence at the hearing on the motion to suppress. The tape recording supports the state's version of defendant's statements.

 Whether a suspect has invoked his right to counsel under either Article I, section 12, or the Fifth Amendment is ultimately a legal conclusion. However, what actually transpired during the interrogation is a question of fact for the trial court. For instance, what words defendant spoke, whether he subjectively intended to request the assistance of counsel, or whether he expressed a desire for assistance of counsel are questions of fact. If the evidence supports the trial court's findings of historical fact they will not be disturbed on appeal. *State v. Montez*, 309 Or 564, 789 P2d 1352 (1990); *Connecticut v. Barrett, supra*. However, we must also assess whether the trial court's historical findings of fact are sufficient to sustain a conclusion that defendant's statements were not obtained in violation of his constitutional right against compelled self-incrimination. *State v. Stevens, supra*; *Miller v. Fenton*, 474 US 104, 106 S Ct 445, 88 L Ed 2d 405 (1985). Although whether a defendant has invoked the right to counsel is a legal inquiry, the inquiry often is so fact-intensive that a trial court's findings of fact, if supported by the evidence, may be dispositive of the legal inquiry. *See State v. Montez, supra*.

 Here, after listening to the tape recording, aided by a transcript, and considering the demeanor of the parties as the conversation was taking place and the context of the entire interview, the trial court found that defendant had not indicated that he wanted to remain silent or that he wanted to talk to an attorney. The trial court made the following findings of fact:

> "THE COURT: * * * [T]aken in the context of the entire interview, *I do not find, as a matter of fact, that that is either an invocation to begin to remain silent or it's a request for an attorney*. And, again, that's taken in the context of the entire interview and from listening to the tape * * * and listening to the demeanor of the parties involved in the conversation and the context of the conversation as it was taking place at that time.
>
> "* * * * *
>
> "Again, I don't find that he indicated that he wanted to remain silent or that he wanted to talk to an attorney. *I find, as a matter of fact, it's more a statement that if this interview is going to continue in the vein that it has digressed to lately,*

*that I'm going to get me an attorney and we'll start to play the game that way.*" (Emphasis supplied.)[5]

Based on our review of the record, including the context in which defendant's statement was made, we conclude that the trial court's findings regarding defendant's request for assistance of counsel are supported by the evidence. Also, the trial court's findings regarding whether defendant asserted his right to remain silent are supported by the evidence. Accordingly, we are bound by those findings. *State v. Montez, supra.* In addition, we agree with the trial court's legal conclusion that defendant did not invoke his right to counsel or his right to remain silent.

Defendant initiated the conversation with the police on November 3, 1989, by requesting to talk with them about the Francke murder. Defendant was so anxious to talk with the police on that date that he twice asked the local jailer at the Coos County jail, where he was in custody, to call Detective Bain. When Bain and Ackom arrived, they did not ask defendant to tell them the information he had about the Francke murder until after they had read him *Miranda*-like warnings and ensured that he understood his rights. Throughout the interview, defendant repeatedly indicated his willingness to discuss the Francke murder and volunteered information to aid the investigation.

This was not the first time that defendant had been questioned by the police about the Francke murder. His previous encounters with the police show that he knew how to ask for the assistance of an attorney. Earlier in the investigation of the Francke murder, defendant had exercised his right to terminate police questioning by unequivocally asking for the assistance of an attorney.[6] On September 16, 1989, police

---

[5] Defendant argues that, in concluding that defendant did not invoke his right to counsel or his right to remain silent, the court inappropriately considered what defendant said *after* he allegedly invoked. The trial court's explanation as a whole establishes that it did not rely on defendant's remarks after he allegedly invoked his right to counsel or his right to remain silent. Rather, the court looked at the context of the conversation as it was taking place at that time. Regardless, we find that the record supports the trial court's findings without consideration of what defendant said after he allegedly invoked his rights.

[6] After defendant invoked his right to counsel, he subsequently reinitiated conversation with the police by requesting that Bain be sent to the Coos County jail because defendant had information that might help with the Francke investigation.

ceased their interrogation of defendant because he had invoked his right to counsel. Defendant had said: "This has gone too far. In fact, I don't want to talk to cops anymore. I want a lawyer." If defendant had wanted the assistance of counsel on November 3, 1989, there is no reason to believe that he would not have unequivocally said so, as he had done on September 16, 1989. The trial court properly considered defendant's past experience and conduct with the police in determining whether he unequivocally requested the assistance of counsel. *Cf. Edwards v. Arizona*, 451 US 477, 101 S Ct 1880, 68 L Ed 2d 378 (1981) (background, experience and conduct of accused relevant to waiver of counsel).

Here, the trial court found that defendant's statement was a warning that if the interview continued to focus on him as a suspect, he would stop the interrogation and ask for an attorney. As the trial court recognized, defendant was entitled to pick and choose what he wished to talk about. *State v. Kell, supra*, 303 Or at 99; *Connecticut v. Barrett, supra*. We agree that the trial court's findings support the legal conclusion that defendant's statements on November 3, 1989, did not amount to an invocation of his right to counsel or his right to remain silent. Accordingly, we conclude that defendant's statements to the police were not obtained in violation of either Article I, section 12, or the Fifth Amendment.

■ Defendant also argues for the first time on appeal that the trial court erred during the penalty phase in instructing the jury and in accepting the jury's verdict that defendant should be sentenced to life imprisonment without the possibility of parole or release on the ground that retroactive application of the 1989 amendments to ORS 163.105 and ORS 163.150 violated the *ex post facto* clauses of the state and federal constitutions. The claim of error is unpreserved and we decline to address it. *See State v. Walton*, 311 Or 223, 241, 809 P2d 81 (1991).

Defendant's remaining assignments of error do not require discussion.

Affirmed.