Argued and submitted September 17, 2012, resubmitted January 7, decision of
Court of Appeals and judgment of circuit court affirmed June 27, 2013

FRANK EDWARD GABLE,
*Petitioner on Review,*

*v.*

STATE OF OREGON,
*Respondent on Review.*

(CC 95C12041; CA A134838; SC S059686)

305 P3d 85

Harrison Latto, Portland, and Nell Irene Brown, Pro Hac Vice, Assistant Federal Public Defender, Portland, argued the cause and filed the brief for petitioner on review.

Carolyn Alexander, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. With her on the brief were Mary H. Williams, Deputy Attorney General, and Anna M. Joyce, Solicitor General.

Before Balmer, Chief Justice, and Walters, Landau, and Baldwin, Justices.**

LANDAU, J.

_____

** Kistler, Linder, and Brewer, JJ., did not participate in the consideration or decision of this case.

Walters, J., dissented and filed an opinion.

**LANDAU, J.**

This is a post-conviction case in which petitioner contends that he received inadequate assistance of counsel at his criminal trial. Specifically, he contends that counsel did not inform him that he had the right to object, on *ex post facto* grounds, to the application of a new sentencing law to his case and that, as a result, his sentence is invalid. It is undisputed that counsel should have informed petitioner of his right to object to the application of the new law to his case. The issue before us is whether the failure to provide that advice prejudiced petitioner, that is, whether receiving the correct advice would have made any difference to his decision not to object. The post-conviction court found, as a matter of fact, that petitioner did not establish that the advice would have made such a difference. Petitioner appealed, and the Court of Appeals affirmed without opinion. *Gable v. State of Oregon*, 243 Or App 389, 256 P3d 1099 (2011). We affirm.

The following facts are not in dispute. In 1989, petitioner was arrested for the killing of Oregon Department of Corrections director Michael Francke in January of that year. At the time of the offense, Oregon law provided two sentencing options for aggravated murder: death or life with the possibility of parole, known as "ordinary life." Specifically, under the law in effect at the time of the offense, a jury could make findings requiring a defendant to be put to death; if it did not, the trial court was required to impose a sentence of life imprisonment with the possibility of parole after a minimum of 30 years of imprisonment. ORS 163.105(1)(e) (1987).

Later in 1989, however, the Oregon legislature amended the law to provide a third, middle option of life *without* the possibility of parole, known as "true life." ORS 163.105(a). The new law provides that true life is the presumptive sentence if the jury does not return findings requiring the death penalty and allows the imposition of a sentence of ordinary life only when 10 members of the jury agree that there are sufficient mitigating circumstances. ORS 163.150(2)(a). *See State v. Wille*, 317 Or 487, 502-04, 858 P2d 128 (1993) (explaining effect of amendment).

In April 1990, defendant was indicted with multiple charges of murder and aggravated murder based on the Francke killing. The case went to trial, and, in June 1991, the jury returned a verdict of guilty on all counts.

The penalty phase of the criminal trial began on July 2, 1991. At defendant's criminal trial counsel's request, the jury was instructed on the basis of the sentencing law in existence at the time of the trial; that is to say, the trial court instructed the jury that it had three sentencing options: death, true life, or ordinary life. (Criminal trial counsel later explained that the defense team had a concern that the jury might have returned a sentence of death if it had been given only the two choices of death and ordinary life.) The jury determined that petitioner should not be sentenced to death, but also should never be eligible for parole. The trial court then sentenced petitioner to life imprisonment without the possibility of parole. The conviction and sentence were affirmed on direct appeal. *State v. Gable*, 127 Or App 320, 873 P2d 351, *rev den*, 319 Or 274 (1994).

Petitioner filed a petition for post-conviction relief. He contended that he had been denied adequate assistance of counsel at trial because, among other things, counsel failed to meet with him and advise him about the case investigation; counsel failed to assert an alibi defense, even though he had always denied being at the scene of the killing; counsel failed to read certain reports and other discovery furnished by the state; and counsel failed to object, on *ex post facto* grounds, to the application of the new sentencing law to his case.

At the hearing in 2000, petitioner testified at length on his various contentions. On the matter of the failure to object to the sentencing instruction, he testified that, had counsel told him about the possibility of objecting to the true life instruction, he would have done so. He explained that, "to me, it's always been the same thing: I'm wrongfully indicted, I'm wrongfully convicted, and it's an all-out situation that's either the death penalty or freedom, you know. There was no in between for me."

The post-conviction court issued 104 pages of findings of facts and conclusions of law. The court noted that, under applicable federal and state case law, petitioner was required to establish both that counsel failed to exercise professional skill and judgment and that petitioner was prejudiced as a result. The court explained that, with respect to the issue of prejudice, petitioner was required to prove that "there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." Throughout those findings, the court found petitioner to be less than credible. It pointed out numerous inconsistencies in petitioner's testimony. It also noted that petitioner had exhibited behavior during the investigation of the case that suggested that he thought that "his mouth allowed him to handle anything he encountered" and that, during the post-conviction proceeding, petitioner similarly believed that "his mouth will set him free in these proceedings."

On the specific issue of the failure of counsel to object to the sentencing instruction, the court concluded that petitioner waived any such objection and dismissed the petition for post-conviction relief. The court explained that, "[i]t seems clear from recent case law that a defendant facing the imposition of the death penalty can waive or relinquish the protection of the State and Federal *ex post facto* Constitutional protections against a retroactive application of the true life option." The court explained that "[t]he true life option affords an additional alternative to a jury considering a death penalty case short of imposing the death penalty, particularly when a jury may be of an opinion that the convicted defendant should never be released into society." The post-conviction court noted that the criminal trial judge had testified that it was "his impression that the choice of the Defense was to go with the life without parole as a defense strategy to give jurors a viable choice other than the death penalty or life with parole." The post-conviction court found that petitioner had every opportunity to raise an *ex post facto* challenge to allowing the jury to consider three possible sentencing options, instead of two, but he never asserted that right. Accordingly, the court concluded, petitioner waived that right.

Petitioner appealed to the Court of Appeals. That court concluded that there had been no waiver and that criminal trial counsel should have advised petitioner of his right to object to the application of the new sentencing law to his case. *Gable v. State of Oregon*, 203 Or App 710, 726, 126 P3d 739 (2006). The court remanded the case for the post-conviction court to make a finding about whether receiving that advice would have made a difference to petitioner in deciding not to object to the application of the law to his case. *Id.* The court explained:

"If petitioner would, in fact, have waived his *ex post facto* rights in these circumstances (as have many similarly situated criminal defendants), then petitioner was not prejudiced by his counsel's default. That is, petitioner might have waived those protections in all events because it was to his practical, tactical benefit to do so."

*Id.* at 735 (citations omitted).

On remand, the post-conviction court permitted petitioner to supplement the record with additional testimony. The record on the issue is as follows:

"The Court: I would be interested though, I guess, in the bottom line. And that is if we can get to that, I wonder if [petitioner's] position has changed. And, of course, in reviewing the case law, generally those defendants who have faced the death penalty have been prone to view that three options being presented to the jury [is] better than the two, and I wonder if his position is the same. Because the reason we're here [is] because his testimony at the trial level when we had the trial in 2000 basically ran something like this[:]

"'If I had my choice, I would have said to the court, to the attorneys, that I want either death or life with the possibility of parole, and not this middle option of true life.' And I am wondering whether his position remains the same today. If it's like as has happened in the past—particularly in one case—where this very issue was the same—went back, and then the defendant changed his mind and said, 'Well, I really do want true life after all.' And then that went up on appeal, and they determined well, he really does have the right to—even though he argued something differently at the appellate level and won on that—prevailed—he still

has the right to change his mind later and then say, 'Well I really do want that option.'

"You said, 'I'm not guilty; therefore, I want death or life with the possibility of getting out—parole in essence.' Is that still—well, I'll leave it to you Mr. Hadley [counsel for petitioner]. I am interested in whether his position changed though.

"Mr. Hadley: Yeah. And I don't have any problem having Mr. Gable answer that ***. But, Mr. Gable, you understand that question clearly, I hope?

"Mr. Gable: Yes.

"*****

"Mr. Hadley: You understand what the Judge was just about to ask you?

"Mr. Gable: Yes.

"*****

"Mr. Hadley: Are you still wanting to go forward today and ask that your sentence be modified and that you either be given life with parole—even if you're risking a chance of facing the death penalty down the line?

"Mr. Gable: Yes.

"Mr. Hadley: You clearly understand?

"Mr. Gable: Yes.

"The Court: You realize the jury found against you—the original jury that heard this case in the penalty phase[.] *** I wonder if it is—is there any reason why you would take that sort of a risk—realizing that that was the result the last time around?

"Mr. Gable: Well, Your Honor, I've claimed innocence since this started—the nightmare. And I figure I'd rather just—if the State chooses to give me the death penalty, I'd rather have that instead of life without parole for a crime I didn't commit."

The post-conviction court again provided detailed findings and conclusions, which incorporated the findings from the 2000 post-conviction proceeding. The court began by noting that petitioner bears "the burden of establishing

prejudice by a preponderance of the evidence. ORS 138.620(2)." The court then found that petitioner had failed to meet that burden. The court explained that,

> "[p]etitioner feels that since he is innocent, if the jury only had the options of death or life with parole, everyone (including the jury, the trial court, the trial counsel and the appellate courts) would have paid closer attention to his case and would therefore somehow reach the conclusion that he is innocent. Petitioner concludes that a potential death penalty would have resulted in greater scrutiny, and yet, the death penalty was always a possibility in the case."

In the court's view, petitioner's case "doesn't make sense." The court added that petitioner, "was *not* a credible witness during [the] trial of this matter and is *not* a credible witness with respect to this issue. Petitioner's position on the 'true-life' issue appears to simply be one more example of a false bravado which is part of the character of the [p]etitioner," and which led him to indulge in falsehoods in other aspects of the proceeding. (Emphasis in original.) "Without resorting to speculation," the court continued,

> "no evidence (Petitioner's testimony is *not* credible) of prejudice resulting from the 'true-life' option being presented to the jury has been shown by the Petitioner. Petitioner Gable has failed to carry his burden by a preponderance of the evidence. There is no evidence other than the Petitioner's testimony, and the testimony is simply not credible."

(Emphasis in original.) The court then entered judgment dismissing petitioner's petition for post-conviction relief. As noted, the Court of Appeals affirmed without opinion.

On review, petitioner now argues that the post-conviction court erred in finding that he failed to meet his burden of establishing prejudice. Petitioner's arguments appear to be threefold: (1) he argues that the post-conviction court "applied an incorrect and more burdensome standard of proof" when it stated that petitioner must establish prejudice by a preponderance of the evidence, (2) that the post-conviction court erred in finding that petitioner's argument did not "make sense," and (3) that, in any event, it is inappropriate even to inquire about what he would have done

had he received proper advice from criminal trial counsel. We address each of those three arguments in turn and conclude that none is persuasive.

Post-conviction relief is warranted when there has been a "substantial denial" of a petitioner's "rights under the Constitution of the United States, or under the Constitution of the State of Oregon, or both, and which denial rendered the conviction void." ORS 138.530(1)(a). The state-based right to adequate assistance of counsel derives from Article I, section 11, of the Oregon Constitution, which provides, in part, that "in all criminal prosecutions, the accused shall have the right *** to be heard by himself and counsel." The federal right to effective assistance of counsel derives from the Sixth Amendment's guarantee that "[i]n all criminal prosecutions, the accused shall enjoy the right *** to have the Assistance of Counsel for his defence." This court has said that, although those provisions are "worded differently," they "embody similar objectives." *Krummacher v. Gierloff*, 290 Or 867, 871, 627 P2d 458 (1981).

Under Oregon law, a petitioner seeking post-conviction relief based on inadequate or ineffective assistance of counsel must demonstrate two things: that his trial counsel failed to exercise reasonable professional skill and judgment and that he suffered prejudice as a result. *Lichau v. Baldwin*, 333 Or 350, 359, 39 P3d 851 (2002). In other words, even if petitioner proves that his trial counsel failed to exercise reasonable professional skill and judgment, he still must prove that he suffered prejudice as a result of that failure. *Stevens v. State of Oregon*, 322 Or 101, 110, 902 P2d 1137 (1995).

In establishing a right to post-conviction relief, "[t]he burden of proof of facts alleged in the petition shall be upon the petitioner to establish such facts by a preponderance of the evidence." ORS 138.620(2). That burden of proof applies to facts related to both prongs of the test for inadequacy of counsel. *Trujillo v Maass*, 312 Or 431, 435, 822 P2d 703 (1991) ("The burden is on petitioner to show, by a preponderance of the evidence, facts demonstrating that trial counsel failed to exercise reasonable professional skill

and judgment and that petitioner suffered prejudice as a result.").

The legal standard that applies to the prejudice prong entails demonstrating that, based on the facts that the petitioner has established by a preponderance of the evidence, the acts or omissions of counsel "had a tendency to affect the result of the trial." *Burdge v. Palmateer*, 338 Or 490, 492, 112 P3d 320 (2005) (quoting *Lichau*, 333 Or at 359); *see also Trujillo*, 312 Or at 435 ("only those acts or omissions by counsel which have a tendency to affect the result of the prosecution can be regarded as of constitutional magnitude").

A petitioner must make a similar showing under the Sixth Amendment. According to *Strickland v. Washington*, 466 US 668, 694, 104 S Ct 2052, 80 L Ed 2d 674 (1984), a petitioner seeking post-conviction relief must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," with "reasonable probability" defined as "a probability sufficient to undermine confidence in the outcome." *Id.*

In reviewing the decision of the post-conviction court, we are bound by its findings of fact if they are supported by evidence in the record. *Lichau*, 333 Or at 359. If the post-conviction court fails to make findings of fact on all relevant issues, and there is evidence from which such facts could be decided more than one way, we will presume that the facts were decided in a manner consistent with the post-conviction court's conclusions of law. *Peiffer v. Hoyt*, 339 Or 649, 660, 125 P3d 734 (2005).

With that background in mind, we turn to petitioner's first argument, that the post-conviction court applied an "incorrect and more burdensome" standard of proof. As we have noted, ORS 138.620(2) expressly provides that a post-conviction petitioner must establish any facts "by a preponderance of the evidence." And this court has stated that that burden of proof applies to facts relevant

both to the questions whether counsel exercised adequate professional skill and judgment and whether any prejudice resulted. *Trujillo*, 312 Or at 435.

Petitioner insists that, at least as to his federal claim of ineffective assistance, the preponderance standard that the post-conviction court mentioned is at odds with what he contends is a less demanding standard of "reasonable probability" required in *Strickland*. That contention, however, is answered by the United States Supreme Court's decision in *Holland v. Jackson*, 542 US 649, 124 S Ct 2736, 159 L Ed 2d 683 (2004). In that case, the petitioner had been convicted of murder and sentenced to life imprisonment. He sought state post-conviction relief, claiming that his criminal trial counsel was constitutionally inadequate in failing to investigate the case. The state post-conviction court denied relief, finding that, among other things, the petitioner had failed to meet his burden of establishing prejudice by a preponderance of the evidence. That decision was affirmed on appeal. The petitioner then sought federal habeas relief. The trial court denied relief, but the Court of Appeals for the Sixth Circuit reversed, holding that the state court had erred in assessing prejudice under a preponderance-of-the-evidence standard. *Id.* at 650.

The United States Supreme Court reversed, explaining that "[t]he Sixth Circuit * * * erred in holding that the state court acted contrary to federal law by requiring proof of prejudice by a preponderance of the evidence rather than by a reasonable probability." *Id.* at 654. The Court noted that the state post-conviction court actually had cited the correct legal standard under *Strickland*. *Id.* Moreover, the Court explained, there is nothing incorrect about stating that the preponderance-of-the-evidence standard generally applies to any factual contentions in a post-conviction proceeding. *Id.* The Court said that there was no reason to assume that the state court had applied the preponderance-of-the-evidence standard in a way that conflicted with *Strickland*. *Id.*

In this case, as in *Holland*, the post-conviction court set out the correct legal standard in its 2000 findings and

conclusions, which actually quoted the reasonable-probability language from *Strickland*. That standard was expressly incorporated into the court's 2006 findings and conclusions. And in this case, as in *Holland*, the post-conviction court cited—accurately—the statutory requirement that a post-conviction petitioner establish all facts alleged in the petition by a preponderance of the evidence. Under the circumstances, as in *Holland*, there is no reason for us to assume that the court applied the statutory burden of proof in a manner that conflicted with the *Strickland* standard.

We turn, then, to petitioner's second argument, that the post-conviction court erred in finding that petitioner's argument did not "make sense." Petitioner cites no authority for the proposition that it is reversible error for a post-conviction court to comment that a particular argument does not make sense, and we are aware of none. Petitioner insists that the trial court erred for two, apparently inconsistent, reasons.

Petitioner begins by asserting that the post-conviction court, in effect, "strayed from the appropriate objective analysis and, instead, substituted its judgment for that of petitioner." But if the post-conviction court's task is, as petitioner suggests, to evaluate the objective reasonableness of petitioner's assertion that, given proper advice, he would have insisted that the jury be given only two sentencing options and not three, then we do not understand why assessing whether that assertion "makes sense" to the post-conviction court is out of bounds.

Next—and apparently in the alternative—petitioner contends that the objective reasonableness of what he would have done if presented with correct advice actually is irrelevant, because a decision not to waive his *ex post facto* rights is purely personal, "regardless of the reasonableness of his choice." Assuming for the sake of argument that petitioner is correct about that, there remains the question whether he persuaded the post-conviction court that that was, in fact, what he would have done. In this case, the post-conviction court expressly, and repeatedly, found that petitioner was not a credible witness on that point. On review, petitioner does not contend that the trial court lacked a basis in the

record to make such a finding. That is dispositive. *Lichau*, 333 Or at 359; *see also Alcorn v. Gladden*, 237 Or 106, 111, 390 P2d 625 (1964) (trial court's finding that post-conviction petitioner "was not worthy of belief" was "conclusive").

Finally, we address petitioner's contention that, in any event, it is inappropriate even to inquire about what he would have done had he received proper advice from criminal trial counsel. According to petitioner, because he did not receive proper advice regarding the possible *ex post facto* objection, the post-conviction court "engaged in pure speculation regarding what would have happened with correct advice." In petitioner's view, but for the lack of proper advice, he would have received a lawful sentence, as demonstrated by this court's decision in *Wille*, in which this court remanded for entry of a sentence of ordinary life when, as in this case, the jury in an aggravated murder case had been improperly instructed on all three sentencing options.

*Wille*, however, was a direct appeal. The only issue in that case was the lawfulness of the sentence. This case, in contrast, is a post-conviction case in which the sole question is the constitutional adequacy of counsel. As we have noted, in such cases, state and federal law require that a petitioner establish that counsel failed to exercise reasonable and professional skill, and that such failure prejudiced petitioner. Petitioner's argument that he was obviously prejudiced because of the unlawful sentence that resulted amounts to question-begging; it assumes the very issue in contention, namely, whether the receipt of correct advice would have made a difference to petitioner—that is to say, whether he would have waived his *ex post facto* objection anyway.

That question cannot be assumed away. It is a critical issue in any post-conviction case when the claim of inadequate assistance turns on the propriety of trial counsel's advice; the court always must determine whether the receipt of correct advice would have made a difference. In that regard, this court's decision in *Moen v. Peterson*, 312 Or 503, 824 P2d 404 (1991), is directly on point. In that case, the petitioner contended that he had received inadequate

assistance of counsel at his criminal trial because trial counsel failed to advise him of the possibility of a minimum sentence before he agreed to plead no contest. The petitioner argued that the receipt of incorrect advice rendered his sentence *per se* unlawful. This court rejected that argument:

> "There are many reasons why a criminal defendant might wish to make a plea agreement, even though aware of the potential imposition of a minimum sentence. The possibility of a minimum is not necessarily determinative in a criminal defendant's decision to enter a plea. And, if a petitioner would not have changed the plea of guilty or no contest even with knowledge of a possible minimum sentence, there is no reason to set aside the conviction."

*Id.* at 512. Accordingly, the court held that, "[i]n order to prevail in this case, petitioner must show by a preponderance of the evidence that, had counsel informed him of the possibility of a minimum sentence, or had he otherwise been aware of it, he would not have pleaded no contest." *Id.* at 513.

Likewise in this case, there are many reasons why petitioner might have wanted to waive his *ex post facto* rights under the circumstances of this case. *See, e.g., State v. McDonnell*, 329 Or 375, 381-82, 987 P2d 496 (1999) (trial court erred in refusing to accept capital defendant's waiver of *ex post facto* objection and present true life option to jury). As petitioner's own criminal trial counsel explained, presenting the jury with three sentencing options instead of two could be viewed as advantageous by a criminal defendant facing the death penalty. Therefore, the controlling question in this post-conviction proceeding, as in *Moen*, is whether the receipt of correct advice about a possible *ex post facto* objection would have made a difference to petitioner in this case. The only evidence on that point is petitioner's assertion that he would have insisted on exercising his *ex post facto* rights and have the jury instructed on only two sentencing options. As we have noted, the post-conviction court did not believe petitioner. There is no suggestion that the post-conviction court lacked a basis in the record for making that finding as to petitioner's credibility. To the contrary, throughout the course of the post-conviction proceeding, the court detailed inconsistencies in petitioner's testimony that

led it to conclude—repeatedly—that petitioner simply was not credible. That ends the matter.

The dissent contends that we have improperly framed the issue and that we should instead address whether petitioner was prejudiced by his lawyer's failure *to object* to the later-enacted sentencing law. That issue, however, is not before us. The Court of Appeals concluded that counsel breached the standard of constitutionally adequate representation in failing *to advise* petitioner of his right to object. It then remanded for findings on "whether petitioner is entitled to post-conviction relief because of his attorney's default in failing to confer with him" regarding his *ex post facto* rights. 203 Or App at 735. The post-conviction court made findings on that issue and that issue alone. The sufficiency of those findings is the only issue properly before us now.

Petitioner advances other arguments, which we reject without discussion.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

**WALTERS, J.,** dissenting.

As the majority's opinion makes evident, to frame an issue is to decide it. Having framed the issue as whether petitioner was prejudiced by his lawyer's *failure to advise him* of his right to object, the majority focuses on what petitioner would have done had he received the requisite advice. However, had the majority framed the issue as whether petitioner was prejudiced by his lawyer's *failure to object* to the application of the later-enacted, more-onerous sentencing law, the majority would have been compelled to focus on the consequences of the lawyer's failure to protect petitioner's rights.[1] Correctly framed, the majority could have resolved

---

[1] The majority contends that this issue is not before the court. 353 Or at 763-64. I do not agree. The Court of Appeals decision was not limited to counsel's failure to advise petitioner. As the Court of Appeals understood, the two issues are interrelated, and, ultimately, as the Court of Appeals held, it was counsel's failure to object that was constitutionally inadequate:

"Petitioner contends that, because he did not waive his *ex post facto* rights, his counsel provided constitutionally deficient assistance in failing to advise him of those rights and, ultimately, *in failing to raise the* ex post facto *objection*

the issue without speculation; we know with certainty that counsel's failure to object prejudiced petitioner.

We know that because of this court's decision in *State v. Wille*, 317 Or 487, 858 P2d 128 (1993). Like petitioner, Wille committed aggravated murder in 1989, when the law provided two sentencing options for aggravated murder: death, or, if not death, "ordinary life"—life with the possibility of parole. At the conclusion of Wille's trial, the jury returned findings that precluded the imposition of the death penalty. Thus, had the trial court correctly applied the law that was in effect in 1989, the only lawful sentence that it could have imposed was ordinary life. *See Wille*, 317 Or at 504 ("If the jury did not agree on the death penalty, the trial court was required to impose a sentence of ordinary life."). The trial court did not do so. Instead, it erroneously applied the law that was in effect at the time of trial and sentenced Wille to "true life"; that is, life without the possibility of parole. Wille appealed, and the Court of Appeals reversed. *State v. Wille*, 115 Or App 47, 61, 839 P2d 712 (1992).

This court affirmed the Court of Appeals' decision and required that Wille be resentenced to life with the possibility of parole. *Wille*, 317 Or at 505. The court reasoned that the application of the later-enacted law violated the constitutional prohibition on *ex post facto* laws because, at the time of Wille's crime, when a jury did not return findings that supported the death penalty, the presumptive sentence for aggravated murder was ordinary life. True life, the court held, "clearly is a more burdensome punishment than ordinary life," and "[t]he fact that a jury, by a vote of 10, affirmatively could have found mitigating circumstances sufficient to warrant reducing the true life sentence to ordinary life does not alter the calculation." *Id*. Consequently, the court remanded Wille's case to the trial court for resentencing

---

to submission of the 'true life' option. We conclude that counsel did breach the standard of constitutionally adequate representation in that regard."

203 Or App at 734 (emphases added). Petitioner includes, in his brief to this court, the argument that, because he did not waive his *ex post facto* rights, counsel was required to raise the *ex post facto objection* and that petitioner was prejudiced by that failure. The state does not contend that petitioner's argument is barred; the state responds. Although we may not be *required* to discuss petitioner's argument, I do not understand the majority's unwillingness to do so.

under the less burdensome law, and Wille was sentenced to ordinary life.

In this case, the jury also returned findings that precluded the imposition of the death penalty, and the trial court also applied the law that was in effect at the time of trial. Petitioner, like Wille, appealed. Petitioner's case came before the Court of Appeals after this court had decided *Wille*, and, following the reasoning in that case, the Court of Appeals could have reversed petitioner's sentence and required that the trial court sentence petitioner, like Wille, to ordinary life. Instead, the Court of Appeals declined to address petitioner's *ex post facto* claim, because his lawyer had failed to raise that claim before the trial court. *State v. Gable*, 127 Or App 320, 332, 873 P2d 351 (1994), *rev den*, 319 Or 274 (1994) ("The claim of error is unpreserved and we decline to address it."). Thus, we need not speculate to conclude that petitioner was prejudiced by his lawyer's failure to object. Petitioner's true life sentence was affirmed because his lawyer failed to preserve his *ex post facto* argument.

Rather than reaching that conclusion, the majority considers the different question of whether petitioner would have waived his right to object to the application of the later-enacted law had his lawyer informed him that he could do so. In reasoning as it does, the majority discusses the fact that the trial court rejected petitioner's testimony that he would not have waived his constitutional right and the trial court's finding that that position did not "make sense." 353 Or at 761. With respect, it is the question that the court asked and not the answer that petitioner gave that does not make sense.

Petitioner's answer that he would not have waived his constitutional right is consistent with both the nature of that right and this court's decision in *Wille*. A constitutional right is a defendant's shield against oppressive state action, and courts are reluctant to find that a defendant has waived a fundamental constitutional right. *State v. Meyrick*, 313 Or 125, 131-33, 831 P2d 666 (1992). In *Wille*, this court decided that the law that was in effect in 1989 when Wille and petitioner committed their crimes was less burdensome than the later-enacted law that was in effect at the time of

their trials. It makes logical sense that petitioner would not waive his constitutional right against the application of the more-burdensome law.

But, more importantly, the majority misses the mark when it focuses solely on whether petitioner's testimony about what he would have done was credible. We know for a fact that petitioner did not waive his constitutional right. As a result, his lawyer had an obligation to assert and protect that right. To ask whether petitioner would have made the same decision had his lawyer discussed the matter with him—a circumstance that did not occur—instead of whether petitioner was prejudiced by his lawyer's failure to object—the circumstance that did in fact occur—does not make sense to me. For the majority, the trial court's finding that petitioner was not credible "ends the matter." 353 Or at 764. For me, it does not. Accordingly, I respectfully dissent.