Argued and submitted July 31, reversed and remanded for new trial
November 1, 2006, respondent's petition for reconsideration filed
November 15 allowed by opinion December 27, 2006
See 210 Or App 362, 149 P3d 1234 (2006)

# STATE OF OREGON,
*Respondent,*

*v.*

# DAVID ARTHUR DAHLEN,
*Appellant.*

0310-35107, 0310-35125;
A124402 (Control), A124403
(Cases Consolidated)

146 P3d 359

David Ferry, Deputy Public Defender, argued the cause for appellant. With him on the brief were Peter A. Ozanne, Executive Director, and Peter Gartlan, Chief Defender, Legal Services Division, Office of Public Defense Services.

Anna M. Joyce, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Brewer, Chief Judge, and Rosenblum, Judge.

ROSENBLUM, J.

## ROSENBLUM, J.

Defendant appeals his convictions for first-degree robbery, ORS 164.415, second-degree attempted robbery, ORS 164.405 and ORS 161.405, and first-degree attempted burglary, ORS 164.225 and ORS 161.405. He assigns error to the trial court's denial of his motion to suppress evidence of statements that he made to police during interrogation after he twice asked, "When can I call my attorney?" We agree that the trial court erred, and we reverse and remand for new trial.

Around midnight on October 1, 2003, Portland police arrested defendant for first-degree robbery. Defendant was placed in a holding cell at the Detective Division near the desk of Officer Mark Snyder. At approximately 5:30 a.m., Detective Cordes Towle executed a warrant to search defendant's house. At approximately 8:30 a.m., while the search was proceeding, Snyder heard defendant knocking on his cell door. When Snyder responded, defendant asked if he could use the restroom and when he could call his attorney.[1] Snyder told Detective Dan McGettrick about defendant's request, and McGettrick called Towle to advise him that defendant had asked when he would be able to call his attorney. McGettrick then entered "Request for Restroom & wants Call-to-Attorney (I Called [Towle])—McGettrick—" in the prisoner log.

At approximately 9:15 a.m., defendant made a second request to speak with counsel. Because McGettrick did not testify at the suppression hearing, we do not know exactly what defendant said, but McGettrick entered "Again Demanding Call. * * * [I c]alled [Towle]" in the prisoner log. Towle testified that when McGettrick called him a second time to reiterate defendant's request, McGettrick also told Towle that defendant was "upset" and "being troublesome" because he wanted to know why he was being held. Towle instructed McGettrick to inform defendant that he was under arrest for first-degree robbery.

---

[1] Defendant was represented by an attorney regarding a separate charge at the time he was arrested for first-degree robbery.

Towle completed the search of defendant's house around 10:00 a.m. He then went to the Detective Division to interview defendant. At approximately 10:45 a.m., Towle asked defendant to read silently a constitutional rights advisal form that recited defendant's right to counsel and right to remain silent, while Towle read the form aloud. Towle asked defendant if he understood his rights, and defendant verbally acknowledged that he did and signed the form. Defendant asked Towle about the robbery that he had been arrested for, and Towle shared some details of the robbery with defendant, who then admitted his involvement.

After obtaining defendant's confession, Towle concluded the interview and returned defendant to his holding cell. McGettrick then approached Towle and asked whether Towle had dealt with defendant's requests regarding when he could speak with an attorney. Towle responded that he had forgotten about the requests. He then went to ask defendant whether he would like to give a tape-recorded statement of his confession "to put it in his own words."

After consulting with an assistant district attorney, Towle resumed the interview shortly after 1:00 p.m. by asking defendant what he meant when he asked Snyder when he could speak to his attorney. Defendant replied, "I just wanted to know what was going on." When Towle asked whether defendant intended not to talk to the police, defendant said, "No, not at any time did I intend not to talk to you." Towle then asked defendant whether he had "any issue with talking to us without an attorney now," and defendant responded, "No." Defendant then gave a tape-recorded confession of his involvement in the robbery. After his second confession, Towle asked defendant whether his answer to the question of what he meant when he asked when he could speak to his attorney would have been different if Towle had asked at the beginning of the interview, and defendant replied that his answer would have been the same; that is, he just wanted to know what was going on and he had no intention to invoke his right to remain silent. Towle concluded the interview sometime after 2:00 p.m.

Defendant was charged with numerous counts of robbery, ORS 164.405 and ORS 164.415, burglary, ORS

164.225, unauthorized use of a vehicle, ORS 164.135, and criminal impersonation of a peace officer, ORS 162.367. He moved to suppress evidence of his statements to the police during the interrogation, arguing that he had unequivocally requested counsel when he asked, "When can I call my attorney?" The trial court made no express findings of fact regarding the circumstances surrounding defendant's requests, but it held that defendant was "not directly asking for a lawyer. That's an unequivocal request. He's saying, 'When can I call a lawyer?' and * * * I don't think it's absolute, it's not unequivocal." The trial court therefore concluded that the police were required to clarify defendant's questions before proceeding with the interrogation and granted defendant's motion with respect to the inculpatory statements made before Towle asked clarifying questions but denied the motion with respect to the statements made after the clarifying colloquy.

Defendant entered a conditional guilty plea on two robbery charges and one burglary charge in exchange for dismissal of the remaining charges, reserving the right to appeal the denial of his motion to suppress evidence that he contends was obtained in violation of his right to be free from compelled self-incrimination and his right to counsel. ORS 135.335(3). On appeal, defendant argues that his requests for counsel were unequivocal and that the trial court erred in admitting his statements made after Towle's clarifying colloquy. The state responds that defendant's requests were equivocal and that, because Towle clarified defendant's intent, the trial court did not err in admitting his subsequent statements.

■ Defendant's right to be free from compelled self-incrimination arises under Article I, section 12, of the Oregon Constitution and the Fifth Amendment to the United States Constitution.[2] Defendant's right to counsel arises under Article I, section 11, of the Oregon Constitution and the Sixth Amendment to the United States Constitution.[3] We consider

---

[2] Article I, section 12, provides that "[n]o person shall be * * * compelled in any criminal prosecution to testify against himself." The Fifth Amendment, which applies to state-court prosecutions through the Due Process Clause of the Fourteenth Amendment, *Malloy v. Hogan*, 378 US 1, 8, 84 S Ct 1489, 12 L Ed 2d 653 (1964), provides that "[n]o person * * * shall be compelled in any criminal case to be a witness against himself."

[3] Article I, section 11, provides that "[i]n all criminal prosecutions, the accused shall have the right * * * to be heard by * * * counsel." The Sixth Amendment,

state constitutional claims before federal constitutional claims. *State v. Esplin,* 314 Or 296, 300, 839 P2d 211 (1992).

■■ We must first address whether defendant's requests for the assistance of counsel were equivocal or unequivocal, for, when a suspect in custody unequivocally asks to talk to a lawyer, Article I, section 12, requires that all police interrogation cease. *See, e.g., State v. Charboneau,* 323 Or 38, 54, 913 P2d 308 (1996); *State v. Montez,* 309 Or 564, 572, 789 P2d 1352 (1990); *State v. Isom,* 306 Or 587, 595, 761 P2d 524 (1988); *see also State v. Sparklin,* 296 Or 85, 89, 672 P2d 1182 (1983) ("[A]ny custodial setting, that is, one in which an individual is not free to leave, is * * * inherently coercive. An attorney's presence at custodial interrogations is one way to secure the right to be free from compelled self incrimination." (internal quotation marks omitted)). Thus, if either of defendant's preinterrogation requests was an unequivocal request for counsel, the trial court should have suppressed all evidence obtained during defendant's custodial interrogation. But if defendant's requests to speak with counsel were equivocal, the police were permitted to ask defendant further questions clarifying his intent in making the request. *Charboneau,* 323 Or at 54. In deciding whether a request for counsel is equivocal or unequivocal, we analyze the request in light of the totality of the circumstances existing when it was made. *State v. Wickey,* 95 Or App 225, 230, 769 P2d 208 (1989).

Defendant twice mentioned speaking with counsel while in custody. First, at approximately 8:30 a.m., he asked, "When can I call an attorney?" That request was recorded in the prisoner log as "Request for Restroom & wants Call-to-Attorney." At approximately 9:15 a.m., defendant made a second request. Although we do not know the precise wording of this second request, McGettrick recorded in the prisoner's log that defendant was "Again Demanding Call." Towle testified that McGettrick told him that the second request "[w]as the same" as the first request.

---

which applies to state-court prosecutions through the Due Process Clause of the Fourteenth Amendment, *Gideon v. Wainwright,* 372 US 335, 342-45, 83 S Ct 792, 9 L Ed 2d 799 (1963), provides that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defence."

■ We are bound by the trial court's findings of historical fact if there is constitutionally sufficient evidence in the record to support those findings. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). If the trial court failed to make a particular finding and there is evidence from which a fact could be decided in more than one way, we presume it was decided in a manner consistent with the trial court's denial of the motion to suppress. *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968). Thus, we presume the trial court credited Towle's testimony that the second request "was the same" as the first request—that is, that defendant asked, " 'When do I get to call' either 'my attorney' or 'an attorney' "—when it concluded that defendant's requests were equivocal. There is evidence in the record to support the trial court's implicit finding, and thus we review anew only whether those requests were equivocal as a matter of law. *See Ehly*, 317 Or at 75.

The state contends (and the trial court appears to have agreed) that the outcome of this case is governed by the fact that defendant's request was "in the future tense, and that is the critical distinction that the [*Charboneau*] court lays out."[4] In *Charboneau*, the defendant sought to exclude inculpatory statements he made after he asked, "Will I have an opportunity to call an attorney tonight?" 323 Or at 52. The Supreme Court concluded that the request was equivocal:

> "In the totality of the circumstances, defendant's question simply does not constitute, as a matter of law, an unequivocal request for a lawyer. For example: (1) Defendant did not say that he wished to speak with a lawyer at the time; rather, he asked about the future. (2) Even regarding the future, defendant's statement did not say that he necessarily would want to speak with a lawyer; he asked only if he would have an *opportunity* to speak with a lawyer later. Although no single characteristic is controlling, defendant's statement, when considered in its entirety, readily suggests that he was *not* invoking his right to speak to a lawyer at that time but might do so later."

---

[4] The prosecutor made that assertion at the suppression hearing. The state reiterates that position on appeal, relying on *Charboneau* to argue that "Defendant was not asking to, *at that moment*, call an attorney, nor did he demand to call his attorney outright." (Emphasis added.)

323 Or at 55 (emphasis in original). According to the state, defendant asked only *when* he would have the opportunity to speak with an attorney, which did not mean that he wanted to speak with a lawyer at that moment. Defendant argues that, unlike the request in *Charboneau*, his requests were an expression of an immediate desire to call his attorney that also sought information regarding the earliest possible time his desire would be fulfilled.

 Whether a request is an equivocal or unequivocal request for counsel depends on whether a reasonable officer in the circumstances would have understood that the suspect was invoking the right to counsel. *See Charboneau*, 323 Or at 60 (citing with approval, *Davis v. United States*, 512 US 452, 458-59, 114 S Ct 2350, 129 L Ed 2d 362 (1994)). The request must be evaluated only in light of what preceded the request; a trial court may not consider subsequent events or conversations when deciding whether a request was unequivocal. *See State v. Gable*, 127 Or App 320, 339, 873 P2d 351 (1994). The context in which the request was made is significant because "[a] statement that may appear tenuous or equivocal in isolation may be a sufficient request for counsel when evaluated in the context of all of the circumstances." *Wickey*, 95 Or App at 230; *see also Sparklin*, 296 Or at 89 ("[D]efendant's request for an attorney at arraignment [was not] an assertion of his right to be free from compelled self incrimination. * * * At arraignment defendant is not confronted with an atmosphere of coercion * * *."). Other considerations relevant to determining whether a request to speak with counsel was equivocal or unequivocal include the demeanor of the parties, *Gable*, 127 Or App at 330, how many times the defendant made the request at issue, *see Isom*, 306 Or at 527 (noting, in *dicta*, that defendant "twice asked for a lawyer before further questioning" when making an unequivocal request for the assistance of counsel), and the ordinary meaning of the words used by the suspect. *State v. Kell*, 303 Or 89, 99, 734 P2d 334 (1987) (citing with approval, *Connecticut v. Barrett*, 479 US 523, 529, 107 S Ct 828, 93 L Ed 2d 920 (1987) ("Interpretation is only required where the defendant's words, understood as ordinary people would understand them, are ambiguous.")).

 Given the totality of the circumstances, we conclude that defendant's request, "When can I call an attorney?" cannot reasonably be said to be equivocal either the first time he

said it or the second time he said it less than an hour later. As the state contended at the suppression hearing and reasserts on appeal, the central issue here is how defendant's use of the adverb "when" related to the rest of the sentence "can I call my attorney." The ordinary meaning of "when" is "at what time: * * * how soon." *Webster's Third New Int'l Dictionary* 2602 (unabridged ed 2002). Were we to accept the state's interpretation of defendant's request (that is, that "[a]t most, [defendant] was asking *when* he would have an opportunity to call an attorney") we would be required either to read words into the request that defendant did not utter (namely, "will I have an opportunity to") or to conclude that defendant used the word "when" out of step with its ordinary meaning. A reasonable officer would interpret defendant's words consistently with their ordinary meanings and would not understand the defendant to say something he did not actually say.

In fact, an officer hearing the request *did* understand that defendant wanted to call his attorney: McGettrick, who personally heard the second request, recorded in the prisoner log that defendant was "Again Demanding Call." That officer's entry in the prisoner log demonstrates that defendant's demeanor made clear his desire to contact his attorney.

We disagree with the state's assertion that the *Charboneau* court's reasons for concluding that "Will I have an opportunity to call an attorney tonight?" was an equivocal request are applicable here. First, the phrase "will I have an opportunity to" may express a present desire to do something, or it may simply be intended to explore one's options. It is ambiguous. "When can I," in contrast, expresses a present desire to do the thing asked about. *See Webster's* at 2602 (defining "when" as "at what time: * * * how soon"). Second, the defendant in *Charboneau* "did not say that he necessarily would want to speak with a lawyer; he asked only if he would have an *opportunity* to speak with a lawyer later." 323 Or at 55. In this case, defendant did not inquire about whether he would have "an opportunity" to call an attorney later. Third, and most importantly, even if the first request could reasonably be understood to ask about the future and not to demand present action, defendant repeated the "same" request less than an hour later. Unlike in *Charboneau*, where the defendant's request "suggest[ed] that he was *not* invoking his right

to speak to a lawyer at that time but might do so later," the repeated request cannot reasonably be interpreted to mean that he "might" wish to call his lawyer at some later time. 323 Or at 55 (emphasis in original). If that was all that defendant was asking with his first request, there would be no reason for him to ask again. That, along with McGettrick's characterization in the prisoner log of defendant's question as a "demand [ ]," compels us to conclude that, at the very least, defendant's second request for counsel was unequivocal.

Because defendant unequivocally requested counsel prior to the interrogation, we need not consider whether Towle's attempt to clarify defendant's intent was adequate. All questioning should have ceased until defendant had an opportunity to contact an attorney, and everything that defendant said after the requests and before an attorney was provided was subject to suppression. The trial court erred by denying defendant's motion to suppress with respect to the second confession.

Reversed and remanded for new trial.