Submitted February 18, affirmed June 18, petition for review denied November 20, 2014 (356 Or 517)

## STATE OF OREGON,
*Plaintiff-Respondent,*

v.

## JOSE ANTONIO MARTINEZ,
*Defendant-Appellant.*

Lane County Circuit Court
231020410; A150536

328 P3d 1277

Peter Gartlan, Chief Defender, and Lindsey K. Detweiler, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Leigh A. Salmon, Assistant Attorney General, filed the brief for respondent.

Before Sercombe, Presiding Judge, and Hadlock, Judge, and Tookey, Judge.

TOOKEY, J.

## TOOKEY, J.

Defendant, who was arrested twice in a four-hour period for driving under the influence of intoxicants (DUII), ORS 813.010, challenges a judgment of conviction for two counts of DUII.[1] He raises three assignments of error on appeal. We reject without discussion defendant's second and third assignments of error, in which he claims that the trial court violated his right to self-representation. We write to address defendant's first assignment of error, in which he contends that the trial court erred when it denied his motions to suppress statements that he made to a drug recognition expert (DRE) and the evidence derived from those statements. Specifically, defendant argues that law enforcement officers violated his right to counsel under Article I, section 12, of the Oregon Constitution[2] and the Fifth Amendment to the United States Constitution[3] by interrogating him without the assistance of counsel; according to defendant, he invoked those rights by asking to speak to an attorney before the administration of a breath test. The state responds that defendant did not invoke his right to the assistance of counsel under Article I, section 12;[4] rather, by responding to the trooper's offer of privacy to make a phone call, defendant merely took advantage of his limited right to a reasonable opportunity to obtain legal advice before deciding whether to submit to a breath test under Article I, section 11, of the Oregon Constitution.[5] For the reasons explained below, we affirm.

---

[1] During a separate trial, defendant was also convicted of unlawful possession of a controlled substance, ORS 475.840. That conviction is not at issue on appeal.

[2] Article I, section 12, provides, in part, "No person shall be *** compelled in any criminal prosecution to testify against himself." Article I, section 12, includes the "derivative right" to the assistance of counsel during custodial interrogation. *State v. Scott*, 343 Or 195, 200, 166 P3d 528 (2007).

[3] The Fifth Amendment provides, in part, "No person *** shall be compelled in any criminal case to be a witness against himself[.]" The Fifth Amendment right against self-incrimination "comprehends not merely a right to consult with counsel prior to questioning, but also to have counsel present during any questioning if the defendant so desires." *Miranda v. Arizona*, 384 US 436, 470, 86 S Ct 1602, 16 L Ed 2d 694 (1966).

[4] The state incorrectly contends that defendant "does not argue that the officer violated his federal rights."

[5] Article I, section 11, provides, in part, "In all criminal prosecutions, the accused shall have the right *** to be heard by himself and counsel[.]" Under

We review a trial court's "denial of a motion to suppress for legal error and defer to the trial court's findings of historical fact if there is sufficient evidence to support them. Consistently with that standard, we take the following facts from the record of the suppression hearing." *State v. Mitchele*, 240 Or App 86, 88, 251 P3d 760 (2010) (internal citation omitted).

Trooper Ratliff, a certified DRE, stopped defendant for failure to drive within the lane of traffic. Officer Gerig provided cover at the stop. Ratliff observed that defendant's face was pale, his speech was slurred, and his pupils were constricted and exhibited little to no reaction to light. Ratliff conducted a brief investigation, read defendant *Miranda* warnings, and arrested him for DUII. Defendant did not, at that time, ask to speak to an attorney. Defendant did not invoke his right to remain silent.

Ratliff transported defendant to the Oakridge Police Department and escorted him to the Intoxilyzer room. After Ratliff and defendant sat down, Ratliff recited the standard "speech" that he gives to every DUII suspect, informing him "of his limited right to use a telephone prior to the administration of a breath test":

> "I told him he could make a phone call if he wanted to. He could make * * * as many phone calls as he wants. The only thing I do ask is if he chooses to call an attorney to let me know so I can give him some privacy."

In response, defendant "asked * * * to speak to an attorney,"[6] so Ratliff provided him with privacy, a phone, and an unrecorded phone line.

Approximately 20 minutes later, Ratliff recontacted defendant, asked if he would be willing to take a breath test, and read him the implied consent form. Defendant agreed to

---

that clause, "an arrested driver has the right upon request to a reasonable opportunity to obtain legal advice before deciding whether to submit to a breath test." *State v. Spencer*, 305 Or 59, 74-75, 750 P2d 147 (1988).

[6] The phrase used throughout our opinion—"asked * * * to speak to an attorney"—is Ratliff's characterization of defendant's response, per Ratliff's testimony at the pretrial hearing on defendant's motions to suppress. At the time of defendant's arrests, the Intoxilyzer room contained no recording equipment, and the record does not reflect the actual words of defendant's response.

provide a breath sample and took the breath test. At no time did defendant indicate that he did not want to take a breath test or that he was unwilling to answer questions.

Ratliff contacted Officer Dalton, who is also a certified DRE, and Dalton completed a 12-step DRE evaluation of defendant.[7] As part of that evaluation, Dalton asked defendant questions about his drug use, and defendant stated that he had consumed a number of controlled substances that day. Dalton also asked defendant to provide a urine sample, and defendant did so. Dalton concluded that defendant "was under the influence of a CNS depressant and a narcotic analgesic."

Defendant was released from custody, and Ratliff drove him to a motel. Ratliff told defendant not to drive. About an hour later, Gerig saw defendant get into a vehicle and drive away. Gerig stopped defendant and, after some conversation, read him *Miranda* warnings. Defendant was again arrested and transported to the police department, where Ratliff conducted a second DRE evaluation of defendant.

Before trial, defendant moved to suppress "all statements made by Defendant after his invocation of his Fifth and Sixth Amendment rights in the form of his request to call an attorney and his calling an attorney by phone during his first arrest and any such statements made during his second arrest before he was Mirandized in the second arrest." Defendant also moved to suppress "the drug recognition expert analysis and Officer Dalton's opinion generated thereby for the reason that without the statements made after Defendant's invocation and during the protocol, the protocol is incomplete and therefore inadmissible."

At a pretrial hearing on defendant's motions, Ratliff testified that he told defendant about his "opportunity to make a phone call" based on DUII case law:

"If you review current case law regarding DUI, I need to tell him that he can call an attorney, and I'm also required

---

[7] The DRE evaluation is a 12-step protocol. *See State v. Sampson*, 167 Or App 489, 493-95, 6 P3d 543, *rev den*, 331 Or 361 (2000) (describing the 12 steps). DRE protocol evidence is offered "to make more probable a fact of consequence—that defendant was under the influence of a controlled substance." *Id.* at 499.

to tell him that he's going to be given privacy. And he needs to be told in a manner that doesn't create a chilling effect in order for him to feel that I'm going to use that against him in any way, which is why I tell them they have the opportunity to make a phone call.

"I tell them they can make as many as they want. That's my personal thing. I don't care how many they make. But I do tell them that if they choose to call an attorney, let me know so I can give them privacy. Because it's the most—it's the least threatening manner in which I—I can do that."

Ratliff further testified that when defendant "asked * * * to speak to an attorney" after hearing the standard DUII "speech," Ratliff did not believe defendant to be invoking his right to remain silent or accompanying right to the assistance of counsel. Rather, Ratliff understood defendant to be invoking his limited right to speak to an attorney prior to the administration of a breath test. Ratliff further testified that defendant did not mention an attorney in any other context, and did not do anything to make him believe that he was invoking his right to remain silent or accompanying right to counsel. Dalton testified that defendant did not indicate at any time during the DRE protocol that he was invoking the right to remain silent or the accompanying right to counsel, or use the word "counsel" or "attorney."

Defendant also testified, and his testimony differed in many respects from that of Ratliff and Dalton. According to defendant, *he* asked Ratliff to call an attorney *after* he took the breath test. Defendant testified that he called "about four" lawyers but could not get an attorney because it was late at night. He further testified that he tried to tell Dalton that he had asked for an attorney, "but she got mad and—and—and—she started screaming at [him]." When asked whether his desire to talk to an attorney went "beyond the question of whether or not to take a breath test[,]" defendant replied, "No." Defendant then testified that he had wanted to speak to an attorney to ask general questions about his case. When defendant was asked whether, during the reading of *Miranda* warnings, he understood Ratliff to say that defendant did not have to answer any questions without an attorney, defendant replied, "That was—that was like an hour earlier, but I didn't remember it."

The trial court denied defendant's motions to suppress. The trial court first found Ratliff's and Dalton's testimony to be credible, both by demeanor and in substance. It then found defendant's testimony to be not credible, stating:

"I do not find, based on demeanor and substance, [defendant's] testimony about what occurred that evening to be credible. If not intentionally misleading, it is, at the end of the day, insufficient. Grossly insufficient for me to find, from his testimony, that anything that happened that evening comes close to that which [defendant] testified here on the stand."

The trial court also found that, although defendant testified that he wanted to speak to an attorney to ask general questions about his case, defendant "never communicated something like that to anybody." The trial court concluded:

"Trooper Ratliff offered [defendant] the opportunity to make a phone call prior to administering the breath test, and under *State v. Smalls*[, 201 Or App 652, 120 P3d 506 (2005), *rev den*, 340 Or 158 (2006),] and *State v. Matviyenko*[, 212 Or App 125, 157 P3d 268 (2007),] that opportunity to contact an attorney prior to being administered a breath test is a limited opportunity that the officer must provide to allow someone to consult with an attorney privately.

"That does not extend and is not construed by this Court to be an unequivocal invocation of one's right to counsel. There was none in this case, and no actions on the part of [defendant] after the giving of Miranda rights would suggest that he invoked those rights to counsel."

Accordingly, defendant's statements, as well as the DRE evidence that was based, at least in part, on those statements, were admitted at trial, and the jury found defendant guilty of DUII.

Defendant argues on appeal that the trial court erred when it denied his motions to suppress. Specifically, defendant argues that (1) he unequivocally or equivocally invoked his right to counsel under Article I, section 12, and the Fifth Amendment; (2) law enforcement officers violated his rights under those constitutional provisions by interrogating him after his first arrest without the assistance of

counsel; and (3) the violation of those rights requires suppression of his statements and the DRE evidence.[8] The state responds that "no reasonable officer in [the] circumstances would have understood that defendant was invoking his rights under Article I, section 12, as opposed to requesting privacy, pursuant to Article I, section 11, for the purpose of consulting with an attorney about whether to take a breath test."

We begin by considering defendant's state constitutional claim. *See State v. Kennedy*, 295 Or 260, 262, 666 P2d 1316 (1983) (court considers and disposes of questions of state law before reaching federal law claims). As noted, the right against self-incrimination, as provided by Article I, section 12, includes the "derivative right" to the assistance of counsel during custodial interrogation. *State v. Scott*, 343 Or 195, 200, 166 P3d 528 (2007). When a suspect in custody makes an unequivocal request to speak to a lawyer, all interrogation must cease. *State v. Charboneau*, 323 Or 38, 54, 913 P2d 308 (1996). However, when a suspect's statement concerning counsel is equivocal, the police "may ask the suspect further questions seeking clarification of the suspect's intent." *Id.* (internal quotation marks and brackets omitted). When the police obtain a defendant's statements in violation of Article I, section 12, those statements must be suppressed. *Scott*, 343 Or at 204-05 (concluding that the defendant's statements must be suppressed because the police failed to cease interrogating him upon his unequivocal request for counsel).

In determining whether a defendant has made an unequivocal request for counsel, an equivocal request for counsel, or neither, we view the defendant's statement "in light of the totality of the circumstances at and [preceding] the time that it was made, to ascertain whether a reasonable officer in the circumstances would have understood that defendant was invoking his rights." *State v. Harding*, 221 Or App 294, 301, 189 P3d 1259, *rev den*, 345 Or 503 (2008)

---

[8] Specifically, defendant argues that he is entitled to suppression of the statements that he made in response to questions posed by Dalton during the DRE evaluation; Dalton's conclusion that defendant was under the influence of a CNS depressant and a narcotic analgesic; the urine sample and test results obtained by Dalton; and Dalton's DRE evaluation results.

(internal quotation marks omitted). Deciding whether a request was unequivocal or equivocal "depends on whether a reasonable officer in the circumstances would have understood that the suspect was invoking the right to counsel[,]" and includes consideration of certain facts, including the ordinary meaning of the words used by the suspect, the number of requests, the context in which the request was made, and the demeanor of the parties. *State v. Dahlen*, 209 Or App 110, 117, 146 P3d 359, *adh'd to as modified on recons*, 210 Or App 362, 149 P3d 1234 (2006) (citing cases).

Although defendant claims that law enforcement officials violated his derivative right to counsel under Article I, section 12, the state asserts that a reasonable officer in the circumstances would have understood only that defendant was invoking his limited right to counsel under Article I, section 11. We therefore pause to examine the rights that are provided to a suspect under Article I, section 11.

Pursuant to the right to counsel clause in Article I, section 11, "an arrested driver has the right upon request to a reasonable opportunity to obtain legal advice before deciding whether to submit to a breath test." *State v. Spencer*, 305 Or 59, 74-75, 750 P2d 147 (1988). A violation of that right requires suppression of the breath test results. *State v. Roesler*, 235 Or App 547, 551, 234 P3d 1004 (2010). The right under Article I, section 11, "includes the right to confer privately with counsel" and does not require an arrested driver to specifically request privacy; rather, "the request for counsel, by itself, indicates that the arrested driver wants the essential elements that inhere in that right, including the opportunity for confidential communication." *State v. Durbin*, 335 Or 183, 189-91, 63 P3d 576 (2003). However, the right to a reasonable opportunity "to consult with an attorney is not unlimited." *Matviyenko*, 212 Or App at 129. First, because of the evanescent nature of the evidence that the police seek to obtain, the police may limit the duration of the opportunity to contact an attorney. *Spencer*, 305 Or at 74. Also, the degree of privacy afforded may be limited for the sake of accurate test results or security concerns. *Matviyenko*, 212 Or App at 129. An arrested driver does not have the right to actually contact an attorney, but "only the right to a reasonable opportunity to do so." *State v. Robinson*,

244 Or App 368, 373, 260 P3d 671 (2011), *rev den*, 352 Or 33 (2012) (internal quotation marks omitted). Finally, because of the "limited nature of the right to counsel that attaches in the DUII breath test setting[,]" Article I, section 11, does not require the state to make attorneys available to indigent arrested drivers at state expense. *Smalls*, 201 Or App at 658-62. In determining whether a defendant has invoked the Article I, section 11, right to an opportunity to obtain legal advice before deciding whether to submit to a breath test, we view the defendant's statement "in light of the totality of the circumstances at and preceding the time that it was made to ascertain whether a reasonable officer in the circumstances would have understood that defendant was invoking [his] rights." *State v. Ohm*, 224 Or App 390, 396, 197 P3d 1136 (2008) (internal quotation marks omitted).

With that background in mind, we now return to our consideration of the central issue in this case—whether a reasonable officer in the circumstances would have understood that defendant was invoking his limited right to counsel under Article I, section 11, or his derivative right to the assistance of counsel under Article I, section 12. As noted, defendant here "asked * * * to speak to an attorney." If a reasonable officer had heard that request *in isolation*, he or she could have concluded, based on the ordinary meanings of those words, that the suspect was invoking the derivative right to the assistance of counsel under Article I, section 12. *See State v. Acremant*, 338 Or 302, 322, 108 P3d 1139, *cert den*, 546 US 864 (2005) (the defendant made an unequivocal request for counsel when he told detectives, "I think that I do need a lawyer. I do.").

However, a request for counsel under Article I, section 12, may not be evaluated in isolation; it must be evaluated in the light of the *totality of the circumstances* of a particular case. *Dahlen*, 209 Or App at 115. Here, defendant did not do anything to make Ratliff believe that he was invoking his right to remain silent or his accompanying right to counsel. Although defendant testified that he wanted to speak to an attorney to ask general questions about his case, the trial court found that defendant "never communicated something like that to anybody" and took "no actions" to suggest that

he was invoking his right to counsel under Article I, section 12. Because there is evidence in the record to support them, we are bound by those findings.

Rather, at the police department, defendant "asked * * * to speak to an attorney" in direct response to Ratliff's offer of privacy to call an attorney prior to the administration of a breath test. Ratliff testified that he made that offer based on his understanding of DUII case law, and specifically stated that he offered defendant "the opportunity to make a phone call." Because defendant "asked * * * to speak to an attorney" only in response to a specific offer, a reasonable officer in the circumstances would not have understood that defendant was asking for the assistance of counsel during custodial interrogation, but would have understood defendant's request as an *acceptance of the offer* that the officer, himself, had just made regarding "the opportunity to make a phone call" prior to the administration of a breath test.

In light of the totality of the circumstances, we conclude that a reasonable officer in the circumstances would have understood that defendant was invoking his limited right to a reasonable opportunity to obtain legal advice before deciding whether to submit to a breath test under Article I, section 11. Accordingly, we conclude that a reasonable officer in the circumstances would not have understood that defendant was invoking the derivative right to the assistance of counsel under Article I, section 12.

We reach the same conclusion under the Fifth Amendment. The Fifth Amendment requires the police to cease interrogation when a suspect in custody invokes the right to counsel. *Miranda v. Arizona,* 384 US 436, 474, 86 S Ct 1602, 16 L Ed 2d 694 (1966) ("If the individual states that he wants an attorney, the interrogation must cease until an attorney is present. At that time, the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning."). Under the Fifth Amendment, a suspect "must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Davis v. United*

*States*, 512 US 452, 459, 114 S Ct 2350, 129 L Ed 2d 362 (1994). To make a clear invocation of the Fifth Amendment right to counsel, a suspect must make, "at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney *in dealing with custodial interrogation by the police." McNeil v. Wisconsin*, 501 US 171, 178, 111 S Ct 2204, 115 L Ed 2d 158 (1991) (emphasis in original). If a suspect's statement fails to meet the requisite level of clarity, officers are not required to stop questioning the suspect. *Davis*, 512 US at 459.

Because, as we have discussed, defendant merely accepted Ratliff's offer of privacy for an opportunity to call an attorney prior to the administration of a breath test under Article I, section 11, he did not clearly express a desire to have counsel present during custodial interrogation. Therefore, a reasonable police officer in the circumstances would not have understood defendant's response as a request for an attorney under the Fifth Amendment.

In sum, because defendant "asked * * * to speak to an attorney" only in direct response to Ratliff's offer of privacy for an opportunity to call an attorney prior to the administration of a breath test, we conclude that, under the totality of the circumstances, a reasonable officer in Ratliff's position would have understood that defendant was invoking his right to counsel under Article I, section 11. Accordingly, a reasonable officer in the circumstances would not have understood that defendant was invoking his right to counsel under Article I, section 12, or the Fifth Amendment. The trial court did not err in denying defendant's motions to suppress.

Affirmed.