POWERS, J.
*830 Defendant appeals a judgment of conviction for resisting arrest, ORS 162.315, assigning error to the trial court's ruling admitting evidence that defendant repeatedly used the word "nigger" when speaking to a police officer. Defendant argues that the evidence should have been excluded under OEC 403[1] because its probative value to the charge of resisting arrest was substantially outweighed by the danger of unfair prejudice. We affirm.[2]
We review a trial court's evidentiary ruling "in light of the record made before the trial court when it issued the order, not the trial record as it may have developed at some later point." State v. Pitt , 352 Or. 566, 575, 293 P.3d 1002 (2012). We review the trial court's ultimate determination under OEC 403 for abuse of discretion. State v. Shaw , 338 Or. 586, 614-15, 113 P.3d 898 (2005).
The charges against defendant arose from a physical altercation with Officer Huntinghouse that occurred as Huntinghouse took defendant into custody for an unrelated offense. During the altercation, they wrestled, and Huntinghouse used his Taser and pepper spray. Defendant was charged with assaulting a public safety officer, ORS 163.208, and resisting arrest, ORS 162.315.[3]
Before trial, the court heard arguments about the admissibility of post-arrest statements that defendant made while a different police officer, Officer Saunders, drove him to jail.[4] The state sought to offer Saunders's testimony that *831 defendant-who is white-called Saunders-who is black-a "nigger." The trial court was also informed that Saunders would testify that defendant said that he "hated the police"; that he made numerous other unsolicited statements disparaging police; that he said that he had "kicked" Huntinghouse's "ass" and would do the same to Saunders; and that he made "continuing statements" using the phrase "fucking nigger," including that Huntinghouse-who is not black-is a "nigger." According to the state, Saunders also heard defendant later explain that he uses that racial epithet or racial slur to pertain, not to skin color, but rather "to the behavior of a person." The state argued that defendant's statements, including his use of the racial slur, were probative of his disdain for police and state of mind shortly after his arrest, which helped establish *995 his motivations and intent for the charged offenses.
Defendant argued that evidence of his statements that used the word "nigger" should be excluded under OEC 403. He contended that "nigger" is one of the most inflammatory words in the English language and that its probative value does not substantially outweigh the danger of unfair prejudice.
The court rejected defendant's OEC 403 argument and allowed the evidence. The court explained:
"I think [defendant's use of the racial slur] is in the context that this happened is probative of his mental state, and the mental state you know involved in this case, and also just for hatred of police, and why he would act the way he did, the State is alleging he acted that day.
"I also don't find the case necessarily to be one that involves race. If it-if it was the use of that word in some other context outside being arrested and transported and the case involved race, then I would say there's a strong probability it would be used for a purpose that would not be allowed, and could outweigh any probative value, but in this case I think given that it was used in the context of him expressing anger in police in general, and-and then later obviously it will come in, if the defense wants, his statements explaining the use of the word where he says he just does it, he uses that word when people act a certain way, and sort of explains that he's not racist. I think given *832 all of that *** the prejudicial effect does not substantially outweigh the probative value, so it will be allowed."
At trial, although the state did not pursue a theory that defendant's conduct was racially motivated, the state referred to defendant's use of the epithet during its opening statement and closing argument as well as during the direct examination of Saunders and cross-examination of defendant. Defendant's theory was that Huntinghouse was the aggressor with respect to the physical altercation. Ultimately, the jury acquitted defendant of the assault charge and found him guilty of resisting arrest.
On appeal, defendant generally reprises the OEC 403 argument that he made to the trial court and argues that, even if the statements were minimally relevant, the state had little need for the evidence because the statements were cumulative of other statements expressing his animus toward law enforcement. The state responds that evidence of the racial epithet was important to prove defendant's state of mind and that its prejudicial effect did not substantially outweigh its probative value. Alternatively, the state contends that any error in admitting the evidence under OEC 403 was harmless.
OEC 403 provides that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence." Evidence is unfairly prejudicial when it has "an undue tendency to suggest a decision on an improper basis, commonly, although not always, an emotional one," and when "the preferences of the trier of fact are affected by reasons essentially unrelated to the persuasive power of the evidence to establish a fact of consequence." State v. Lyons , 324 Or. 256, 280, 924 P.2d 802 (1996).
As noted, we review the trial court's ultimate balancing decision under OEC 403 for abuse of discretion. Shaw , 338 Or. at 614-15, 113 P.3d 898. Insofar as "discretion" refers to a trial court's authority to choose among several legally correct outcomes, a trial court abuses its discretion when it fails to choose one of those options.
*833 State v. Rogers , 330 Or. 282, 312, 4 P.3d 1261 (2000). We agree with the state that the trial court's decision to admit evidence of defendant's racial slur, under the circumstances presented in this case, was within the range of permissible legal outcomes.
We first consider the probative value of the evidence. Defendant's use of the racial slur was indicative of his state of mind and would permit an inference of his attitude toward law enforcement as a whole, which suggested a motive for his actions. Evidence of his state of mind was particularly probative *996 because defendant was alleged to have acted intentionally. That is, it is readily apparent that, given the context of defendant's statements-while Saunders was transporting defendant to jail, he called her and Huntinghouse "nigger"-the statements were demonstrative of defendant's animus toward police. That animus was relevant to prove his intent for the charged crimes. See State v. Turnidge , 359 Or. 364, 452-53, 374 P.3d 853 (2016), cert. den. , --- U.S. ----, 137 S.Ct. 665, 196 L.Ed.2d 554 (2017) (holding that evidence of the defendant's antigovernment views was relevant to prove his animus toward police, explaining that "the fact that defendant held vehement anti-government, anti-establishment, and anti-law enforcement views supplied evidence of his motive for his participation in the ultimate explosion that killed and injured law enforcement officers"). Moreover, although the state also informed the trial court that defendant had told Saunders that he "hated" the police (and made other disparaging statements), using the racial epithet provided proof of his hatred toward police that is qualitatively distinct from that more generic statement. Consequently, such proof was not duplicative of his general statement of animus. That matters because "[i]ntent or state of mind is often the most difficult element of a crime to prove because many crimes are unwitnessed and [,] even if a witness is present, the witness can only surmise the actor's state of mind." State v. Johns , 301 Or. 535, 551, 725 P.2d 312 (1986).
We next consider the risk of unfair prejudice. Defendant asserts that the risk of unfair prejudice was high because allowing the jury to hear evidence that he called both officers "nigger" unfairly focused the jury on defendant's racial views, which were not a material issue. Defendant remonstrates: "The word is one of the most offensive in the English *834 language and evidences overtly racist characteristics that society roundly condemns. *** There was a substantial risk that the jury would use defendant's racism to conclude that he was generally a bad person," such that he acted in conformity with his general bad character and that he needed to be punished regardless of the evidence in the case.
We reject defendant's argument that OEC 403 required the trial court to exclude defendant's repeated use of a racial slur in a case where his racial views were not a material issue. Although it is true that the word "nigger" is often used in a highly offensive and inflammatory manner-as it was in this case-that its use was offensive and inflammatory does not mean that evidence of its use must be unfairly prejudicial. To be sure, there may be circumstances, as the trial court recognized in its ruling, in which the danger of unfair prejudice outweighs the probative value derived from evidence of the use of a slur, but those circumstances are not presented in this case. In addition, racial slurs, like sexist and homophobic slurs, are not uncommon. Indeed, it is almost unimaginable that this was the first time that an officer was confronted with racist rhetoric. And just as the record suggests that Saunders continued to do her job professionally without regard to defendant's use of the offensive term, we believe that jurors can, in some circumstances, properly consider evidence of caustic language with the other evidence presented in the case without giving it undue weight or being so affected as to decide the case in an improper manner. If jurors can bear witness to bloody photographs and graphic testimony and still properly reach a decision on the merits, then surely they can hear defendant's unsavory racial slur, place it in context with the other evidence, and deliberate on all of the evidence to reach a verdict. That a juror may have to work hard to check her or his own assumptions and prejudices at the courthouse door in order to render a fair and impartial verdict does not require the exclusion of racially charged words from being entered into evidence, where, as here, the trial court determines that the evidence has probative value that is not substantially outweighed by the risk of unfair prejudice.
Thus, in light of our standard of review, it was within the trial court's discretion to allow the jury to hear *835 that defendant repeatedly used the word "nigger" under the circumstances presented in this case.[5] Said differently, *997 the trial court did not abuse its discretion by admitting the evidence, which would require the jury to grapple with the realities of this type of expression while following the court's instruction to calmly and dispassionately weigh all of the evidence it finds worthy of belief. See, e.g. , UCrJI 1005.[6] Accordingly, we affirm.
Affirmed.

OEC 403 provides:
"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

We reject without written discussion defendant's claim that the trial court erred in denying his motion for a mistrial. See State v. Inman , 275 Or. App. 920, 938, 366 P.3d 721 (2015), rev. den. , 359 Or. 525, 379 P.3d 518 (2016).

Defendant was also charged with disorderly conduct in the second degree, ORS 166.025. The court dismissed that charge, on the state's motion, before trial.

The record is unclear about which party raised the evidentiary issue. No briefs were filed, and the parties began orally discussing the issue immediately before trial. The court stated, "I'm not sure who's making the Motion in Limine at this point, but if this is the defense, which it really should be, a defense Motion in Limine excluding the use of that word, that will be denied."

The dissent concludes that the trial court abused its discretion in admitting the contested evidence, relying on, among other cases, Bray v. American Property Management Corp. , 164 Or. App. 134, 988 P.2d 933 (1999), rev. den. , 330 Or. 331, 6 P.3d 1101 (2000). In that case, we rejected a claim that the trial court abused its discretion in excluding evidence that the decedent used racial slurs in his face-to-face encounters, including during the fatal assault, with the garage attendant. Id. at 143-44, 988 P.2d 933. In so ruling, however, this court cited Carter v. Moberly , 263 Or. 193, 501 P.2d 1276 (1972), in which the court explained:
" 'We simply determine whether, on the facts of the particular case, the trial court's ruling was within the reasonable or permissible range. We need not determine whether [its] ruling was the only one possible. It may be that the record will support either admission or exclusion; if so, the trial court's ruling will be affirmed, regardless of which solution we would prefer.' "
Bray , 164 Or. App. at 144 n. 7, 988 P.2d 933 (quoting Carter , 263 Or. at 201, 501 P.2d 1276 ) (bracketed text in Bray ). Although this case presents the opposite situation where the trial court admitted, rather than excluded, evidence of racial slurs, the Bray and Carter reasoning similarly applies, viz ., the trial court's ruling admitting the contested evidence was within the reasonable or permissible range of choices under these circumstances.
Moreover, it is not unreasonable to conclude that jurors, who have heard the word "nigger" or who have observed (and possibly even personally experienced) a racist, sexist, or homophobic insult, can follow the court's instructions and give proper weight to a defendant's use of a racial epithet. Thus, a trial court may conclude that although inflammatory or prejudicial, the use of the slur is not unfairly prejudicial. "Words themselves are innocuous; it is the consensus that gives them true power." Gloria Naylor, "Mommy, What Does 'Nigger" Mean?" (1986), reprinted in The Norton Reader , 271 (10th ed. 2000). There may be circumstances in which a trial court abuses its discretion by admitting such evidence, but under the circumstances presented here, this is not one of those cases.

UCrJI 1005 provides, in part:
"In deciding this case, you are to consider all the evidence you find worthy of belief. It is your duty to weigh the evidence calmly and dispassionately and to decide this case on its merits. Do not allow bias, sympathy, or prejudice any place in your deliberations."