GARRETT, P.J.
*126 Defendant appeals a judgment of conviction for assault in the first degree, ORS 163.185. On appeal, defendant raises four assignments of error. We reject the third and fourth assignments without discussion. In his first assignment of error, defendant argues that the trial court erred in denying his motion to suppress incriminating statements made during a police interview after, according to defendant, he invoked his constitutional right to counsel. In his second assignment of error, defendant argues that the trial court should have granted his motion in limine to exclude evidence that he used a racial epithet to describe a black person. For the reasons explained below, we reject defendant's first assignment of error because we conclude that he never invoked his right to counsel. With respect to his second assignment, we conclude that the trial court erred, that the error was not harmless, and that a new trial is necessary. Accordingly, we reverse and remand for a new trial.
Police officers arrested defendant as a potential suspect in a stabbing at a Portland MAX Station. Detectives Hogan and Crate interviewed defendant at the police station early in the morning. Defendant was asleep when they entered the room. After brief introductions, Hogan read defendant his Miranda rights, and then asked if defendant had any questions about them. Defendant responded that he was intoxicated, homeless, and did not know what time it was, where he was, or how he had gotten there. Hogan told defendant the time and explained where he was, and began re-reading his Miranda rights. The following exchange ensued:
*44 "DETECTIVE HOGAN: Okay. You have the right to talk to a lawyer and have him present when you're being questioned. If you want to have a lawyer, you can have a lawyer present, okay?
"[DEFENDANT]: Do I need one?
"DETECTIVE HOGAN: I can't make that decision for you.
"DETECTIVE CRATE: We're just going to be talking to you about stuff that happened tonight, okay, but we need *127 to make sure you understand your rights first before going through them. So once you understand those, we'll explain everything that's going on, okay?
"[DEFENDANT]: Okay.
"DETECTIVE HOGAN: If you cannot afford to hire a lawyer, one will be appointed to represent you at no expense."
(Emphasis added.) Neither defendant nor the detectives further discussed defendant's right to an attorney. A few moments later, the detectives told defendant that they were investigating a fight at a MAX Station, and asked:
"DETECTIVE CRATE: Mr. Roberts, you know that Tri-Met and everything has excellent video on its platforms, right?
"[DEFENDANT]: I have no idea about that, but I was on that platform and this dude punched me in the face, so I punched him and I walked away.
"DETECTIVE HOGAN: Okay.
"[DEFENDANT]: They was probably doing some nigger shit[1] there . This dude hit me."
(Emphases added.) The detectives later asked about what defendant meant when he said either "nigger shit" or "nigger chick," and learned that defendant was referring to a black woman who witnessed the fight at the MAX Station. The police never discovered her identity, and she had no further significance in the case. After that exchange, defendant made several incriminating statements.
Defendant moved to suppress all statements from the interview, arguing that the police failed to obtain a valid Miranda waiver of his right to remain silent. Defendant's written motion did not make any argument concerning the right to counsel. During arguments on the motion, the court watched a video of the interview and asked the state if defendant's question "Do I need one?" was at least an equivocal invocation of the right to counsel. An extended discussion followed, primarily between the court and state, about what *128 constitutes an equivocal invocation. Both parties cited case law. As the state points out on appeal, however, defendant's counsel never argued that the question "Do I need one?" constituted an equivocal invocation, and never asserted that the trial court did or would err by ruling otherwise. The trial court ultimately determined that defendant had made no invocation, and, even if he had made an equivocal invocation, the police properly clarified his intent before proceeding.
Next, defendant moved in limine to exclude all references in the police interview to the racial epithet, asserting that his use of the word had nothing to do with the case and would cause him unfair prejudice. The court denied the motion, stating:
"THE COURT: The bottom line is, you know, if we start sanitizing everybody's statements-
"[DEFENSE COUNSEL]: Well, it's just the one.
"THE COURT: -where does that end, you know. So, no, I'm not going to ask the State or anybody else to clean up poor word choices that either he or the officers made. You know, it's a path that would lead to nothing but disaster. So, denied."
At trial, defendant relied on a self-defense theory. The state played a portion of the police interview video in which defendant used the racial slur once and the detectives quoted it twice more to clarify what defendant was talking about. The state used the interview video to attack defendant's credibility by highlighting inconsistencies between his interview statements and other contrary evidence. The state also presented one eyewitness of the fight and played a video of Tri-Met security camera footage depicting the stabbing itself; both parties argued extensively *45 over whether the witness testimony and footage proved or disproved defendant's self-defense theory. The jury found defendant guilty by a 10-2 verdict.
On appeal, defendant first argues that the trial court should have granted his motion to suppress on the ground that his question near the beginning of the police interview-"Do I need one?"-was an equivocal invocation *129 of his right to counsel, which the police failed to adequately clarify.[2] The state responds that defendant's argument is not preserved, and, in all events, fails on the merits because defendant's question did not constitute an invocation of any rights.
Second, defendant contends that the trial court erred in denying his motion in limine under OEC 403 to exclude evidence of defendant's use of the racial epithet, arguing that the evidence was highly prejudicial and devoid of probative value. The state responds that any error in admitting the evidence was harmless, but that, if it was not harmless, then a limited remand is appropriate under State v. Baughman , 361 Or. 386, 393 P.3d 1132 (2017).[3]
We begin with the invocation issue. We review for legal error whether defendant's question was an invocation of his right to counsel under Article I, section 12, of the Oregon Constitution, and defer to the trial court's findings of facts if they are supported by the evidence in the record. State v. Sanelle , 287 Or. App. 611, 613, 404 P.3d 992 (2017), rev. den. , 362 Or. 482, 412 P.3d 199 (2018). We limit our analysis to the record developed at the motion hearing. State v. Pitt , 352 Or. 566, 575, 293 P.3d 1002 (2012).
At the outset, we consider the state's argument that defendant failed to preserve this issue. The state's position, as we understand it, is a narrow one. Conceding that the trial court raised the equivocal invocation issue sua sponte , and further conceding that the issue was extensively discussed, briefed, and ruled on, the state points to the fact that defendant never took an explicit position on that issue below, but focused instead on the distinct issue of the right to remain silent. Put more succinctly, the state argues that defendant never put the trial court on notice that defendant *130 believed that it would be error for the court to rule the way that it did, and that defendant may not make that argument for the first time on appeal.
The purposes of the preservation requirement are to (1) apprise the trial court of a party's position such that it can consider and rule on it, (2) ensure fairness to the opposing party by avoiding surprise and allowing that party to address all issues raised, and (3) foster full development of the record. Peeples v. Lampert , 345 Or. 209, 219-20, 191 P.3d 637 (2008) (adding that the "touchstone" of the pragmatic basis for preservation is procedural fairness to the parties and the court).
The record reflects that the invocation issue was extensively discussed, although defendant did little to advance that discussion. As we understand the state's argument, the state does not dispute that the trial court had the opportunity to-and did-"consider and rule" on the invocation issue; nor does the state contend that the state did not have an adequate opportunity to argue the issue or that the record would have developed differently if defendant had been a more active participant in the dialogue.
The state's argument is limited to the fact that defendant did not expressly assert "error" by the trial court. In our view, that argument is foreclosed by our cases that have deemed issues preserved, despite a party's own failure to raise them in the trial court, in circumstances where the issues were nonetheless raised and argued and the purposes of the preservation requirement appear *46 to have been served. For example, in State v. Smith , 252 Or. App. 707, 712, 288 P.3d 974 (2012), rev. den. , 353 Or. 429, 299 P.3d 890 (2013), we held that the defendant's argument on appeal was preserved, even though it had not been made below, where "the trial court raised the issue sua sponte -in effect recharacterizing the issue and defendant's argument in order to address the theft by receiving charge more specifically-and the state responded at length before the trial court specifically ruled on that issue." Id. at 712, 288 P.3d 974 (emphasis in original). We specifically reasoned that "there is no indication that development of the record was impaired because the court, rather than defendant, raised the issue." Id. at 711-15, 288 P.3d 974. See also *131 State v. Spears , 223 Or. App. 675, 680-81, 196 P.3d 1037 (2008) (concluding that defendant's argument on appeal was preserved where the trial court raised the issue sua sponte after defendant moved for judgment of acquittal); State ex rel. Juv. Dept. v. Tyree , 177 Or. App. 187, 190, 33 P.3d 729 (2001) ("In determining whether an assignment of error is preserved, the most significant question is whether the trial court had a realistic opportunity to make the right decision.").
The foregoing cases stand for the proposition that a party's failure to assert error or object below is not dispositive of the preservation analysis, at least in circumstances where the issue was clearly raised and ruled upon, where the opposing party had an opportunity to be heard on the issue, and where there is no reason to believe that the record before the trial court would have developed materially differently if the appellant had been more vocal. Those circumstances exist here, and the state has not argued that the cases cited above are distinguishable or were incorrectly decided. Accordingly, we conclude that the invocation-of-counsel issue was preserved for our review, and we proceed to the merits.
The issue is whether, as defendant argues, the circumstances of the police interview would have led a reasonable officer to understand that defendant meant to invoke his right to counsel under Article I, section 12, when he asked the detectives whether he needed a lawyer. Although he acknowledges that his purported invocation-"Do I need one?"-was framed as a question instead of an assertion, defendant argues that that fact is not dispositive.
The right to have an attorney present during a custodial police interrogation is derived from a person's right against self-incrimination under Article I, section 12. State v. Scott , 343 Or. 195, 200, 166 P.3d 528 (2007). A suspect invokes the right to counsel by making a statement or request that a reasonable officer would understand as an invocation. Sanelle , 287 Or. App. at 624, 404 P.3d 992 ; State v. Alarcon , 259 Or. App. 462, 466, 314 P.3d 364 (2013), rev. den. , 354 Or. 838, 325 P.3d 739 (2014). We review whether defendant invoked his rights by considering his statement "in the context of the totality of circumstances existing at the time of and preceding their *132 utterance" to determine whether a reasonable officer would understand that defendant was invoking his rights. State v. Nichols , 361 Or. 101, 108-09, 390 P.3d 1001 (2017) (quoting State v. Avila-Nava , 356 Or. 600, 613, 341 P.3d 714 (2014) ).
Invocations of one's Article I, section 12, rights may take one of two forms: unequivocal or equivocal. State v. Schrepfer , 288 Or. App. 429, 436, 406 P.3d 1098 (2017). An invocation is unequivocal when the suspect expresses a clear intent to invoke his or her rights. See Nichols , 361 Or. at 110, 390 P.3d 1001 (noting that unequivocal invocations typically involve a statement of "the desired action or view relating to the right in question (won't answer questions, don't want to talk, need a lawyer)"); State v. Brooke , 276 Or. App. 885, 892, 369 P.3d 1205 (2016) ("[A] mere reference to an attorney does not necessarily constitute an unequivocal invocation of the right to counsel; however, where a suspect expresses a clear desire to speak with an attorney, that suspect has invoked that right."). If a suspect in police custody unequivocally invokes the right to an attorney, the interrogation must immediately cease. State v. Boyd , 360 Or. 302, 313, 380 P.3d 941 (2016) ; State v. Meade , 327 Or. 335, 339, 963 P.2d 656 (1998).
*47 An invocation is equivocal, in contrast, when the suspect's statement or request is subject to more than one reasonable interpretation, one of which is that he or she is invoking the right to counsel. See Avila-Nava , 356 Or. at 609, 341 P.3d 714 (providing that, when a defendant's invocation is "ambiguous or equivocal," the police must clarify "what the person meant"); State v. Dahlen , 209 Or. App. 110, 118, 146 P.3d 359, modified on recons , 210 Or. App. 362, 149 P.3d 1234 (2006) (observing that the phrase "will I have an opportunity to call an attorney" was ambiguous because it "may express a present desire to do something, or it may simply be intended to explore one's options" (referencing State v. Charboneau , 323 Or. 38, 913 P.2d 308 (1996) ); see also Meade , 327 Or. at 348 n. 10, 963 P.2d 656 (Durham, J., dissenting) (observing that the case law surrounding invocations of the right to counsel tends to use "ambiguous" and "equivocal" interchangeably, both meaning that the listener could reasonably interpret two or more meanings from a single statement) (quoting Janet E. Ainsworth, *133 In a Different Register: The Pragmatics of Powerlessness in Police Interrogation , 103 Yale L.J. 259, 299 n. 203 (1993) ) ). If a suspect's request for an attorney is equivocal, it places additional obligations on police before they may continue the interrogation. Specifically, they must ask neutral, follow-up questions to clarify the suspect's intent. Avila-Nava , 356 Or. at 609, 341 P.3d 714 (citing Charboneau , 323 Or. at 54, 913 P.2d 308 ); Meade , 327 Or. at 339, 963 P.2d 656. Any question not reasonably designed to clarify the equivocal nature of the statement is impermissible. Schrepfer , 288 Or. App. at 436, 406 P.3d 1098.
Here, defendant does not contend that he unequivocally invoked his rights. Therefore, we consider whether his question "Do I need one?" was an equivocal invocation by examining the totality of the circumstances to determine whether a reasonable officer in Hogan's and Crate's position would have understood at least one plausible meaning of that question to be that defendant was invoking the right to counsel. If so, the request required clarification.
We conclude that defendant's question was not an equivocal invocation because it is not reasonably susceptible to an interpretation that defendant was invoking his right to counsel. Rather, the only reasonable interpretation of defendant's question is that he had not yet formed any intent to invoke his right, and was seeking additional information that the detectives were not required to provide. See Dahlen , 209 Or. App. at 118, 146 P.3d 359 (suggesting that a defendant's question that is only "intended to explore one's options" reflects insufficient intent to invoke the right to counsel); U.S. v. Ogbuehi , 18 F.3d 807, 814 (9th Cir 1994) (concluding that the defendant's question, "Do I need a lawyer? " did "not rise to the level of an 'equivocal request,' " but was instead merely a request for advice).
Defendant cites other cases in which a suspect was determined to have made an invocation of the right to counsel by putting questions to the police. In each of those cases, however, the question was susceptible to a plausible interpretation that the defendant was, in fact, expressing a present desire to invoke his or her rights. See, e.g. , Brooke , 276 Or. App. at 894, 369 P.3d 1205 (holding that the question "Can I call my mom? She's a lawyer" was an unequivocal request for an attorney, in part because it expressed "a present desire to do the thing asked about" (quoting Dahlen , 209 Or. App. at 118, 146 P.3d 359 ) );
*134 Alarcon , 259 Or. App. at 468, 314 P.3d 364 (holding that the defendant's question about "when she could call a lawyer" was at least an equivocal request for counsel, in part because it expressed "a present desire" to do the thing asked about (quoting Dahlen , 209 Or. App. at 118, 146 P.3d 359 ) ); Dahlen , 209 Or. App. at 118, 146 P.3d 359 (holding that the question "When can I call an attorney?" was an unequivocal request for counsel, in part because the phrasing "when can I" "expresses a present desire to do the thing asked about," like the phrase from Charboneau , 323 Or. at 55, 913 P.2d 308, "[w]ill I have an opportunity to call an attorney tonight?"). Cf., e.g. , State v. Montez , 309 Or. 564, 572, 789 P.2d 1352 (1990) (concluding that the phrase "I think I need a lawyer" was, at most, an equivocal invocation of the right to counsel);
*48 State v. Gable , 127 Or. App. 320, 332, 873 P.2d 351 (1994) (holding that a warning to invoke the right to counsel at a later point if the police continued to accuse him of murder did not constitute even an equivocal invocation of the right to counsel).[4]
Here, in contrast, there is no reasonable interpretation of defendant's question in which defendant was expressing a "present desire" to invoke his right to counsel. We therefore agree with the trial court that defendant's question did not amount to even an equivocal invocation of the right to counsel, and we affirm on the first assignment of error.
We turn to defendant's second assignment of error. Defendant argues that the trial court should have excluded, under OEC 403, portions of the police interview video containing defendant's use of a racial epithet. The state does not make a merits argument that the court properly admitted the evidence under OEC 403, but instead argues that the trial court's failure to develop a record of its balancing analysis necessitates a limited remand under Baughman to allow the trial court an opportunity to develop that record. 361 Or. at 410-11, 393 P.3d 1132 (holding that, when the trial court fails *135 to make an appropriate analysis under OEC 404 and OEC 403, the proper remedy is to allow the trial court to correctly conduct that analysis). Alternatively, the state posits that any error in admitting the evidence was harmless.
We agree with the state that the trial court failed to make a record of its OEC 403 balancing analysis. Under OEC 403, trial courts must determine whether the probative value of the evidence to which a party objects is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence." A trial court "errs as a matter of law if it fails to conduct OEC 403 balancing when requested to do so or if it fails to make a record that reflects that the court has conducted the requested OEC 403 balancing." State v. Garcia-Rocio , 286 Or. App. 136, 142, 399 P.3d 1009 (2017).[5]
Here, the trial court's only record of its reasoning for admitting the evidence was the following:
"The bottom line is, you know, if we start sanitizing everybody's statements- *** where does that end[?] *** You know, it's a path that would lead to nothing but disaster."
We are unable to discern from that record whether the trial court consciously conducted OEC 403 balancing, and, if it did, how it weighed the evidence's probative value against the danger of unfair prejudice. The court accordingly erred in failing to make a record of its OEC 403 balancing.
Although, in these situations, we typically remand to the trial court for the limited purpose of allowing it to develop the necessary record, Baughman , 361 Or. at 410, 393 P.3d 1132, we need not do so here. Limited remands are necessary when the reviewing court is "not in a position to know whether the *136 trial court will exclude or admit" the evidence at issue when reconsidering the parties' new arguments on remand. Id. But where a trial court has no option *49 other than to exclude the evidence, Baughman 's rule is inapplicable. This court has foregone limited remands in OEC 403 balancing cases that present no discretionary options for the trial court, and in which exclusion of the evidence in question is required. See, e.g. , State v. Parker , 285 Or. App. 777, 784-87, 398 P.3d 437 (2017) (reversing the trial court's admission of evidence that was devoid of probative value and was unfairly prejudicial to defendant, and remanding for a new trial, notwithstanding the lack of a record regarding the trial court's OEC 403 balancing rationale).
Even though trial courts generally have discretion in making balancing decisions under OEC 403, State v. Shaw , 338 Or. 586, 614-15, 113 P.3d 898 (2005), they have no discretion where a question presents only one legally permissible outcome. See State v. Rogers , 330 Or. 282, 312, 4 P.3d 1261 (2000) ("If there is only one legally correct outcome, then 'discretion' is an inapplicable concept."). And here, as we explain below, there is no legally permissible outcome but exclusion.
For one, the evidence here is utterly devoid of any probative value, and the state does not argue otherwise. Compare State v. Lipka , 289 Or. App. 829, 833, 413 P.3d 993 (2018) ("Defendant's use of the racial slur was indicative of his state of mind and would permit an inference of his attitude toward law enforcement as a whole, which suggested a motive for his actions."). Defendant's slur referred, in passing, to someone whom the police never identified, and who was not relevant to the issues in the case. Both defendant and the victim were white, and the state did not rely on a race-based theory in its case at trial.
Second, we have already recognized that the potential for unfair prejudice arising from this type of evidence is "manifest," Bray v. American Property Management Corp. , 164 Or. App. 134, 144, 988 P.2d 933 (1999), and the word's inflammatory quality invites jurors to convict defendant for reasons unrelated to the evidence. See State v. Lyons , 324 Or. 256, 280, 924 P.2d 802 (1996) (defining "unfair prejudice"
*137 to mean "an undue tendency to suggest a decision on an improper basis, commonly, although not always, an emotional one"). Although that does not mean that it would be an abuse of discretion to admit evidence of racial epithets in all circumstances, see, e.g. , Lipka , 289 Or. App. at 835, 835 n. 5, 413 P.3d 993 (acknowledging Bray but nevertheless concluding that the trial court did not abuse its discretion in admitting evidence of a racial epithet), we are persuaded that it is true here, on this record. Cf. Bray , 164 Or. App. at 143-44, 988 P.2d 933 (trial court did not abuse its discretion in excluding evidence of racial slurs where the potential for undue prejudice was "manifest" and the "probative value of *** [the] racial epithets was insubstantial").
Third, both at trial and on appeal, the state has made no merits argument that the trial court could , in the exercise of its sound discretion, conclude that the danger of unfair prejudice did not "substantially outweigh" the probative value of the evidence. In the absence of any such argument, we are persuaded that the interests of judicial efficiency would not be served by a Baughman remand. Instead, we conclude, under these circumstances, that OEC 403 required exclusion of the evidence.[6] See Lipka , 289 Or. App. at 834, 413 P.3d 993 ("[T]here may be circumstances *** in which the danger of unfair prejudice outweighs the probative value derived from evidence of the use of a slur ***."); Parker , 285 Or. App. at 786-87, 398 P.3d 437 ("Where a defendant has objected to the admission of a prejudicial piece of evidence and offered a nonprejudicial evidentiary equivalent, the Supreme Court has stated that in such circumstances 'the prejudicial effect of the evidence would outweigh its probative value and it is not admissible.' " (quoting State v. Zimmerlee , 261 Or. 49, 54, 492 P.2d 795 (1972) ) ).
Finally, the trial court's error was not harmless. Error is harmless when there is "little likelihood that the error affected *50 the verdict." State v. Davis , 336 Or. 19, 32, 77 P.3d 1111 (2003). Erroneously admitted evidence is more *138 likely to affect the verdict where it is qualitatively different than the rest of the admitted evidence. State v. Maiden , 222 Or. App. 9, 13, 191 P.3d 803 (2008), rev. den. , 345 Or. 618, 201 P.3d 909 (2009).
The racial epithet that defendant used is highly offensive and inflammatory. See Lipka , 289 Or. App. at 834, 413 P.3d 993 ; see also Swinton v. Potomac Corp. , 270 F.3d 794, 817 (9th Cir. 2001) (" '["Nigger" is] perhaps the most offensive and inflammatory racial slur in English * * *.' " (quoting Merriam-Webster's Collegiate Dictionary 784 (10th ed. 1993) ) ). The introduction of such evidence, in a case where it lacks any probative value, presents the risk that the jury would be tempted to deliver a verdict on the improper ground that defendant is a racist who deserves punishment.[7]
Furthermore, this case presented a significant question as to whether defendant acted in self-defense. The security camera footage introduced by the state shows that the victim approached defendant at least once and physically struck him before the stabbing. Only one of the state's witnesses saw the stabbing, and he did not testify as to whether defendant's actions appeared unjustified. This is not a case, therefore, in which we can readily conclude that the erroneous admission of evidence was harmless because the other evidence of defendant's guilt was "overwhelming." See State v. Stewart , 270 Or. App. 333, 340, 347 P.3d 1060, rev. den. , 357 Or. 743, 361 P.3d 608 (2015) ("[W]e have considered the significance of challenged evidence in light of the presence or absence of other 'overwhelming evidence' of a defendant's guilt."); see, e.g. , State v. Villanueva-Villanueva , 262 Or. App. 530, 535, 325 P.3d 783 (2014) (concluding that erroneously admitted hearsay evidence was not harmless because "there was no overwhelming evidence of guilt for defendant's convictions").
The dissent would conclude that the error was harmless because the security camera footage and eyewitness testimony provided "unrebutted evidence of what occurred,"
*139 and thus was more probative evidence than the police interview. 291 Or.App. at 144, 418 P.3d at 53 (Edmonds, J., dissenting). However, that evidence could support more than one interpretation regarding the justification of defendant's actions. For example, the security camera footage depicts the victim striking defendant first while defendant was sitting down. What the dissent describes as the victim's "defensive posture" could also be characterized as an offensive fighting stance; further, the victim attempts to strike defendant multiple times during the six-second altercation. Although the jury convicted defendant, the verdict was not unanimous. Accordingly, we decline to speculate about how the jury weighed and relied on all of the evidence, and we cannot agree with the dissent that the admission of defendant's inflammatory epithet had little likelihood of affecting the verdict.
Reversed and remanded.

It is unclear from the record whether defendant actually said "shit" or "chick."

Defendant's right-to-counsel argument is made under Article I, section 12, of the Oregon Constitution. Defendant makes no argument under the United States Constitution.

We reject the state's contention that defendant failed to preserve his OEC 403 argument because his objection below primarily focused on relevance and spoke little of prejudice. While arguing that the evidence in question had "nothing to do with this case," defendant never explicitly narrowed his objection to relevance alone, and further argued that the evidence was "extremely prejudicial." We conclude that defendant adequately preserved his OEC 403 argument.

Defendant argues that, because he was intoxicated and disoriented at the time, the officers should have understood his question as simply an inarticulate or nonassertive invocation of his rights. We are unconvinced that, even given defendant's condition at the time, a reasonable officer would have understood the question "do I need a lawyer?" to actually mean "I want a lawyer." Cf. Dahlen , 209 Or. App. at 118, 146 P.3d 359 ("A reasonable officer would interpret defendant's words consistently with their ordinary meanings and would not understand the defendant to say something he did not actually say.").

Although a trial court need not expressly follow them, a trial court's record must establish that it considered the four matters prescribed in State v. Mayfield , 302 Or. 631, 645, 733 P.2d 438 (1987) :
"(1) assess the proponent's need for the proffered evidence; (2) determine how prejudicial the evidence is; (3) balance the proponent's need for the evidence against the danger of unfair prejudice; and (4) make a ruling to admit all, part, or none of the proffered evidence."
State v. Borck , 230 Or. App. 619, 636, 216 P.3d 915, adh'd to as modified on recons , 232 Or. App. 266, 221 P.3d 749 (2009), rev. den. , 348 Or. 291, 231 P.3d 795 (2010) (internal quotation marks omitted).

A Baughman remand may well be the appropriate disposition in other cases involving evidence such as this. Our conclusion here is heavily based on the undisputed lack of any probative value to the evidence, and the fact that the state has identified no permissible basis on which the trial court could decide on remand to admit the evidence.

Our recent decision in Lipka is not inconsistent with our reasoning here. Lipka held that, under the circumstances of that case, OEC 403 did not require exclusion of evidence that the defendant used the word "nigger," because the prejudicial effect of that evidence did not substantially outweigh its probative value. 289 Or. App. at 834, 413 P.3d 993. Lipka thus did not address the question of whether the erroneous admission of that racial epithet may be harmless. Id. at 835, 413 P.3d 993.